

# NUMBER 13-07-00701-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ANTONIO F. VERA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                               Appellee.

### On appeal from the 117th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Chief Justice Valdez**

A jury found Antonio F. Vera, appellant, guilty on three counts of sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.011 (Vernon Supp. 2008). The trial court assessed punishment at twenty five years' confinement for each count, to run concurrently. In two issues, Vera: (1) challenges the legal and factual sufficiency supporting his

conviction; and (2) contends that the punishment violates the Eighth and Fourteenth Amendments to the United States Constitution because it is disproportionate. *See* U.S. CONST. amends. IIX, XIV. We affirm.

## I. BACKGROUND

On the evening of October 12, 2006, J.D., a fourteen-year-old boy returning home from an afternoon of fishing, encountered his father and a group of his father's friends, including Vera, drinking in front of his house. J.D. went inside and fell asleep in his bed. Around 10 or 11 p.m., J.D.'s father woke J.D. up and asked him to walk Vera to his trailer home down the road.[1] J.D., dressed in boxer shorts, waders, and a t-shirt, obliged. According to J.D.'s testimony, when the two reached Vera's trailer home, Vera offered J.D. three shirts and went inside to get them. Vera then asked J.D. to enter the trailer.

J.D. testified that when he entered the trailer, Vera was standing a few feet from the doorway, and he was completely naked and had an erection. J.D. further testified that Vera tore off J.D.'s clothes, forced J.D.'s mouth to contact his penis by pulling J.D.'s head down towards it, put his mouth on J.D.'s penis, and put his penis on J.D.'s anus. J.D. remembered feeling "some stuff" on his back, wiping it off, retrieving his boxer shorts and t-shirt, and running out of the trailer. Once he reached his home, J.D. outcried to his mother.

S.J., J.D.'s mother, testified that on the evening of October 12, 2006, J.D. told her that Vera "tried putting his thing in his mouth." After she heard J.D.'s outcry, S.J. picked up an ax, went into Vera's trailer, encountered Vera near the doorway wearing nothing but an erection, and tried to "chop off" his penis. S.J. recalled that Vera defended himself

---

[1] Vera, who was sixty-seven years old at the time, walked with a cane.

2

against her attack by hitting her with his cane.

David Rodriguez and Daniel Hernandez , deputies with the Nueces County Sheriff's Department, responded to a dispatch call regarding a sexual assault. Deputy Rodriguez testified that S.J. was very upset and angry, and he noted that J.D. looked to be in "very serious shock." Deputy Hernandez testified that S.J. was crying hysterically, and he observed J.D. "starring off" into the distance. Deputy Hernandez further testified that when he went to Vera's home to investigate the report, Vera immediately started repeating, "I didn't do anything." After J.D. identified Vera as the assailant, Deputy Hernandez arrested Vera, escorted him to a patrol car, and found him mobile and not completely helpless.

After the incident, J.D. was taken to a hospital, where he recounted what had happened to Ricardo Jimenez, an interviewer, and Elizabeth Andelman, a forensic nurse examiner. On cross examination by Vera's counsel, J.D. admitted not telling Jimenez that Vera's penis touched his anus. Upon further cross examination, J.D. admitted not telling Andelman about Vera possibly ejaculating on his back because he was scared even though such information might have aided her forensic examination.

Andelman testified that she examined J.D., and she swabbed his mouth, penis, and anus for DNA evidence. Andelman further testified that she observed bruises on J.D.'s arms and photographed them. Regarding evidence of forced anal contact, Andelman stated that she did not observe any injury to J.D.'s anus, but that anal injury is infrequent because the organ can stretch and heal quickly. Andelman also testified that young men, as a group, are not eager to talk about anal intercourse when providing a history of assault.

Robin Olson Castro, a forensic scientist with the Department of Public Safety, tested the swabs for DNA evidence, and she testified that the penile swab contained a mixture

3

of DNA from J.D. and Vera. Castro stated that the presence of Vera's DNA on J.D.'s penis is consistent with the accusation that Vera performed oral sex on J.D. Castro also stated that it would be very unlikely for Vera's DNA to have transferred to J.D.'s penis from causal contact, such as Vera handing a tool to J.D.

Maria Briones, a registered nurse who works at the county health department, and Patrick Jennings, clinical manager for the county jail, were called by Vera to testify as to his health and mobility. Briones testified that Vera did not require assistance to go to the bathroom. Jennings testified that Vera was placed in the jail's infirmary and that he has limited mobility because of arthritis. On cross examination by the State, Jennings testified that Vera had a strong, steady gait and that use of a cane is not representative of upper body strength.

Vera did not testify at trial. The three counts of sexual assault of a child that the jury charge included asked the jury to determine whether Vera intentionally and knowingly caused: (1) J.D.'s sexual organ to penetrate or contact his mouth; (2) Vera's sexual organ to penetrate or contact J.D.'s mouth; and (3) Vera's sexual organ to contact J.D.'s anus. *See* Tex. Penal Code Ann. § 22.011(a)(2)(C)-(E).

The jury found Vera guilty on all three counts. Vera elected to go before the trial court for punishment. The trial court assessed punishment at twenty-five years' confinement for each count, to run concurrently. This appeal followed.

## II. Sufficiency of the Evidence

In his first issue, Vera contends that the evidence is legally insufficient to support his conviction because only the victim testified that he committed the alleged sexual

assault.  Additionally, Vera argues that the evidence is factually insufficient because:  (1) he vehemently denied the accusation; (2) there was ample evidence that he was an invalid and incapable of assault; and (3) "one could interpret the evidence . . . [to conclude] that the [J.D.] approached [Vera] for sexual favors", "[Vera] rejected such advances", "then there had been oral[-]genital contact initiated by [J.D.]", and J.D.'s "state of shock [was] a mere shame for parents and friends to cover his conduct towards [Vera]."

## A.     Standards of Review

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004).  The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).  We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact.  *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Beckham*, 29 S.W.3d at 151.  Instead, we consider whether the jury reached a rational decision.  *Beckham*, 29 S.W.3d at 151.

When conducting a factual sufficiency review, we view all of the evidence in a neutral light.  *Ladd v. State*, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999).  We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and

manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Under the first prong of *Johnson*, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 416 (Tex. Crim. App. 2006). Under the second prong of *Johnson*, we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id*. Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson*, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. In conducting a factual sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *See Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

"Appellate courts should afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). "The jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record." *Id*. The jury may choose to believe some testimony and disbelieve other testimony. *Id*. at 707.

**B. Analysis**

Vera contends that the evidence is legally insufficient to support his conviction because only the victim testified that he committed the alleged sexual assault. However,

6

the testimony of a child victim alone is sufficient to support a conviction for sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (Vernon 2005) ("A conviction under Chapter 21, Section 22.011, or Section 22.021, Penal Code, is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred."); *Ruiz v. State*, 891 S.W.2d 302, 304 (Tex. App.–San Antonio 1994, pet. ref'd) (citing *Villalon v. State*, 791 S.W.2d 130 (Tex. Crim. App. 1990)). Accordingly, Vera's legal sufficiency challenge is overruled.

As to his factual sufficiency challenge, Vera's asserts that he vehemently denied the accusation when confronted by Deputy Hernandez and that there was ample testimony that he was a disabled inmate from Briones and Jennings. The testimony from these three individuals, Vera argues, establishes that the jury's verdict is against the great weight and preponderance of the evidence.

The jury, however, heard testimony that contradicts Vera's argument from J.D., S.J., and Deputy Hernandez. In addition to testifying about the incident, J.D. testified that he had seen Vera move rails and pipes in his yard, turn on a generator that his older brother could not turn on, and fix cars. S.J. stated that Vera successfully defended himself against her ax attack by striking her with his cane. Further, Deputy Hernandez testified that Vera was mobile and not completely helpless on the night of the incident. Moreover, Vera's assertion that Briones and Jennings provided ample testimony as to his disability is misplaced. Briones testified that Vera could go to the bathroom on his own, and Jennings testified that Vera had a strong, steady gait and that the use of a cane is not indicative of

7

upper body strength.

"The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). In resolving conflicts in the evidence, a jury "may accept one version of facts and reject another or reject any of a witness' testimony." *Baker v. State*, 986 S.W.2d 271, 276 (Tex. App.–Texarkana 1998, pet. ref'd). In this case, the jury accepted a version of the facts that envisioned Vera as capable of carrying out the alleged offenses.

Vera's final factual sufficiency argument is that J.D. made sexual advances towards him, succeeded to some extent—which explains the DNA evidence—and then made up the allegations to conceal his behavior. This argument is advanced without any citation to the record, perhaps because it is not supported by any direct evidence. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

In any event, there is direct evidence contradicting Vera's argument. During redirect examination, the State asked J.D. if he was in any way interested in being physical with Vera, to which J.D. responded, "No." Later, during re-cross examination of J.D. by Vera's counsel, the following discussion took place:

Q:     J.D., if you had wanted to be with [Vera] you wouldn't come in to tell us that today, would you?

A:     No.

Q:     You'd be ashamed to tell us that?

A: Why would I want to have sex with him? Why would I want to be near him? I'm barely wanting to look at him and you're telling me that you want me to—you're saying I want him to be screwing [me]. That's not even right, man.

Q: My question is whether or not you would tell us.

A: I would tell you straight up that yeah, I wanted to do it, but why would I want to do it with him?

Q: Okay.

A: It's a stupid question.

Assuming, out of an abundance of caution, that Vera's final factual sufficiency argument is adequately briefed, we conclude that all of Vera's factual sufficiency challenges fail because the evidence is not so weak that the jury's verdict is clearly wrong or manifestly unjust, nor is the verdict against the great weight and preponderance of the evidence.

Vera's first issue is overruled.

### III. DISPROPORTIONATE PUNISHMENT

In his second issue, Vera contends that his twenty-five-year sentence is so disproportionate to the offenses that it constitutes a cruel and unusual punishment. *See* U.S. CONST. amends. IIIX, XIV. To support his contention, Vera refers us to the United States Constitution, the Magna Carta, and the Code of Hammurabi. The State argues that Vera waived his second issue by not raising it with the trial court. We agree.

To preserve error for appellate review, a party must present at the earliest possible opportunity a timely objection to the trial court, state the specific grounds for the objection, and obtain an adverse ruling. TEX. R. APP. P. 33.1(a); *Dixon v. State*, 2 S.W.3d 263, 265

(Tex. Crim. App. 1998). Even certain constitutional guarantees are also subject to forfeiture if a proper objection was not made at trial. *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002). Failure to make a specific objection to a disproportionate sentence in the trial court or a post-trial motion waives any error for appellate review. *Quintana v. State*, 777 S.W.2d 474, 479 (Tex. App.–Corpus Christi 1989, pet. ref'd).

Vera failed to make an objection on the basis of a disproportionate sentence in the trial court or in a post-trial motion, and he raises this issue for the first time on appeal. Therefore, Vera's second issue is not preserved for review.

## IV. CONCLUSION

The trial court's judgment of conviction and sentence is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Do Not Publish. TEX. R. APP. P. 47.2(b)
Memorandum Opinion delivered and
filed this the 21st day of May, 2009.

10