

# NUMBER 13-18-00307-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**AMADO ROBERTO SANCHEZ,**                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                        **Appellee.**

### On appeal from the 105th District Court
### of Kleberg County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Perkes, and Tijerina**
**Memorandum Opinion by Justice Perkes**

Appellant Amado Roberto Sanchez appeals his sentence of twenty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. By one issue, Sanchez argues that the sentence was excessive and in violation of the Eighth Amendment of the United States Constitution. *See* U.S. CONST. amend. VIII. We affirm.

## I. BACKGROUND

On April 13, 2017, Sanchez pleaded guilty to one count of tampering with physical evidence,[1] a third-degree felony enhanced to a second-degree felony, and pleaded true to the alleged enhancement paragraphs. *See* TEX. PENAL CODE ANN. §§ 12.42, 37.09(a)(2). The trial court placed Sanchez on four years' deferred adjudication. Six months later, the State filed its first motion for revocation, alleging two violations: (1) Sanchez committed the offense of arson, a second-degree felony, *see id.* § 28.02; and (2) Sanchez committed the offense of criminal mischief with a pecuniary loss of $100 or more but less than $750, a class B misdemeanor, *see id.* § 28.03(b)(2). The State later amended its motion to include an additional violation, alleging Sanchez tested positive for cocaine while under community supervision.

On May 18, 2018, the trial court held a hearing on the State's motion to revoke. Sanchez pleaded true to the allegation of drug use and not true to the two new offenses. The State presented multiple witnesses.

Lieutenant Elda Perez Schultz with the Brooks County Sheriff's Office, Jail Division testified to the events of June 26, 2017, giving rise to Sanchez's arson and criminal mischief charges. According to Schultz, Sanchez was incarcerated in the Brooks County Jail, had "been known to cause problems in the jail," and was a known gang member of the Texas Chicano Brotherhood (TCB). Schultz testified, on June 26th, she heard loud

---

[1] According to documents contained in the judicial confession and stipulations packet signed by Sanchez, a police officer was patrolling a neighborhood at approximately 3:06 a.m. on July 10, 2016, when he observed Sanchez riding a bicycle that was not properly equipped for nighttime riding. The officer noted Sanchez also matched the description of a suspected burglar reported earlier the same evening. After the officer made contact with Sanchez, he observed Sanchez retrieve an item from his pocket and intentionally stomp on it. Sanchez refused to take his foot off the item. The officer then placed Sanchez under arrest for tampering with evidence. The item was ultimately identified as a makeshift pipe containing a strong odor of marijuana and synthetic marijuana.

commotion coming from the containment pod that housed Sanchez and three other inmates. Schultz approached the pod and determined that Sanchez and another inmate were "upset that they had lost their privileges,[2] as per the sheriff, for an incident that happened" two days prior. Schultz said the men ultimately "settled down," and she returned to her workstation in the control room, where she continued to monitor Sanchez's cell via surveillance cameras. Schultz testified that she saw Sanchez approach the smoke alarm stationed inside the cell and throw baby powder on it, setting off the smoke detector and damaging the equipment. Per procedure, Schultz silenced the alarm and continued to observe Sanchez as he "pac[ed] back and forth." Schultz then walked back to Sanchez's pod and saw smoke coming out from between his pod and an adjoining pod. Schultz, with the assistance of several other jailors, was able to extinguish the fire.

George Esparza, a commander with the Brooks County Sheriff's Office, testified to the damages he observed: burn marks on both sides of Sanchez's pod door, burn marks on the floor of Sanchez's cell, a broken remote inside Sanchez's cell, and burnt county-issued jumpsuits or uniforms.

Vicente Lopez, an investigator with the sheriff's office, testified to images admitted during the revocation hearing depicting the damage, noting burn marks and ash residue on the walls and bedsheets, in addition to burn markings on the door and cell floor. Lopez opined that Sanchez had used the battery from a television remote, pencils, a piece of foil paper, and "clipper oil" to start the fire. Based on his investigation, Lopez determined the fire was started on debris clustered outside Sanchez's cell door, with items passed through the cell door's food panel opening. Lopez testified Sanchez was not observed on

---

[2] Schultz explained inmate "privileges" included phone use, access to commissary items, and communication with visitors.

3

surveillance starting the fire because there was "a blind spot" by the door.[3] According to Schultz, "[o]nly two people kept going towards the door"—Sanchez and one other inmate.

As its last witness, the State called jail administrator Marivette Mireles to testify to the amount of damages sustained. Damages totaled $1,050.

In closing arguments, the State argued there was sufficient evidence to prove by a preponderance of the evidence that Sanchez committed the offense of criminal mischief with a reported loss of $100 or more but less than $750. Regarding the arson allegation, the State argued that Sanchez, though not seen starting the fire on surveillance, is seen participating, assisting, and encouraging others to participate before, during, and after the alleged offense. Conversely, Sanchez maintained that there was no evidence that he, individually, was the perpetrator of either alleged offense. The trial court found the evidence regarding all three allegations to be true, noting the "lower standard of evidence"[4] during revocation proceedings, revoked Sanchez's community supervision and adjudicated him guilty of the underlying offense of tampering with evidence.

At a later date, the trial court held a sentencing hearing and took judicial notice of Sanchez's entire case file, which included Sanchez's stipulations to prior convictions contained in the indictment. The State called one witness for sentencing, Lieutenant William Edward Gross with the Criminal Investigations Division of the Texas Department of Public Safety, to testify to Sanchez's criminal history and gang association.

---

[3] The State admitted surveillance footage into evidence, and all parties, including several witnesses, made repeated references to the footage. The video exhibit, however, was not included in the reporter's record on appeal.

[4] "In a revocation proceeding . . . the burden of proof is by a preponderance of the evidence." *Simpson v. State*, 591 S.W.3d 571, 575 (Tex. Crim. App. 2020) (quoting *State v. Waters*, 560 S.W.3d 651, 662 (Tex. Crim. App. 2018)).

4

Gross stated Sanchez is a confirmed member of the TCB, a gang which has been operating in the Rio Grande Valley since 1994 and utilizes violence as its sole commodity. Gross stated Sanchez's name has been found on previously confiscated membership ledgers, and Sanchez has a documented history of paying a "commissary fee" during periods of incarceration to jailed gang leaders. Gross also testified that Sanchez's criminal history included forty arrests and seventeen convictions—more than fifteen of which were for "aggravated assaultive" actions.

Gabriela Ann Sanchez, Sanchez's wife of eleven months, maintained that apart from sharing a cell with TCB members, her husband has not "participated" in the gang since his "last charges." Gabriela explained that she's known Sanchez since they were children, and they have one child together. Gabriela urged the court to consider reinstating his probation so that they could "get [their] lives together as a family." On cross-examination, Gabriela denied that she was the victim in either of his two prior assault family violence convictions from 2005 or 2008.

Sanchez testified as well, conceding his membership status with TCB, but claiming his on-going intent to "distance away and not associat[e]" with any known TCB members. Sanchez pleaded for the trial court to allow him an opportunity to "participate in probation" and seek treatment for his drug use:[5]

> I've been to prison, I've been to state jail, and I get out and it's not helping with the drug problem that I got. And the drug problem is really what escalates me into more problems. . . . I'm telling everyone that cares to listen that I'm trying to change my life due to being married and growing up.

---

[5] Sanchez claimed his drug use "started with marijuana," and has since escalated to cocaine and synthetic marijuana use.

Sanchez admitted during cross-examination that he was unemployed prior to his incarceration, and that he relied on his wife and 62-year-old grandmother to support him and his children, including a child from a previous relationship.

The trial court sentenced Sanchez for a period of twenty years' confinement. This appeal followed.

## II.    EXCESSIVE PUNISHMENT

In his sole issue on appeal, Sanchez contends that his twenty-year sentence is excessive and in violation of his Eighth Amendment right. *See* U.S. CONST. amend. VIII.

### A.    Standard of Review

We review the trial court's assessment of punishment for an abuse of discretion. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *Quintana v. State*, 777 S.W.2d 474, 479–80 (Tex. App.—Corpus Christi–Edinburg 1989, writ ref'd). When a sentence is within the prescribed statutory range set down by the legislature, sentencing authorities have nearly "unfettered" discretion to impose any punishment within that range. *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd) (providing that as long as the sentence is assessed within the legislatively determined range, it will unlikely be disturbed on appeal).

### B.    Applicable Law

An allegation of excessive or disproportionate punishment is a legal claim "embodied in the Constitution's ban on cruel and unusual punishment" and based on a "narrow principle that does not require strict proportionality between the crime and the sentence." *State v. Simpson*, 488 S.W.3d 318, 322–24 (Tex. Crim. App. 2016) (citing

6

*Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); U.S. CONST. amend. VIII. A successful challenge to proportionality is exceedingly rare and requires a finding of "gross disproportionality." *Simpson*, 488 S.W.3d at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)).

To determine whether a sentence for a term of years is grossly disproportionate to a defendant's crime, the reviewing court must weigh the severity of the sentence in light of: (1) the harm caused or threatened to the victim, (2) the culpability of the offender, and (3) the offender's prior adjudicated and unadjudicated offenses. *Id.* at 323 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)); *see also Goode v. State*, No. 13-17-00539-CR, 2018 WL 3910088, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 16, 2018, pet. ref'd) (mem. op., not designated for publication). Only if we conclude that the sentence is grossly disproportionate, do we compare the challenged sentence against the sentences of other offenders in the same jurisdiction and the sentences imposed for the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 290 (1983); *Simpson*, 488 S.W.3d at 323.

## C.    Waiver

We first note that it is "well settled that almost every right, constitutional and statutory, may be waived by the failure to object." *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986); *Quintana*, 777 S.W.2d at 479 (holding that defendant waived his cruel and unusual punishment argument by failing to object); *see also Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). To preserve a complaint that a sentence is grossly disproportionate, the defendant must make a timely, specific objection to the trial court or raise the issue in a motion for new trial. *See* TEX. R.

7

APP. P. 33.1(a); *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd); *Noland*, 264 S.W.3d at 151–52.

At no time prior to this appeal did Sanchez argue that his sentence was disproportionate or that his sentence violated the Eighth Amendment of the United States Constitution. *See* U.S. CONST. amend. VIII. Accordingly, we hold that Sanchez failed to preserve his complaint for review. *Smith*, 721 S.W.2d at 855; *Trevino*, 174 S.W.3d at 927–28 ("Because the sentence imposed is within the punishment range and is not illegal, we conclude that the rights [appellant] asserts for the first time on appeal are not so fundamental as to have relieved him of the necessity of a timely, specific trial objection."). We overrule Sanchez's sole point of error.

Assuming Sanchez had preserved the issue for review, Sanchez's claim is nonetheless without merit. Sanchez principally urges this Court to perform the three-part test originally set forth in *Solem.* 463 U.S. at 290. As discussed above, the application of the *Solem* test has been modified by Texas courts, requiring a threshold determination that the sentence is grossly disproportionate to the crime *before* addressing the remaining elements. *See Simpson*, 488 S.W.3d at 322–23. Sanchez claims that the trial court, though sentencing Sanchez within the punishment range allotted under the statute, unfairly based its decision on evidence from the "Brooks County Jail incident," rather than evidence from the underlying offense.

Despite Sanchez's protests, such consideration of Sanchez's seventeen adjudicated and more than forty arrests—including the "jail incident"—is explicitly permissible under the gross disproportionality test set forth in *Simpson. See id.* at 322 (citing *Lockyer*, 538 U.S. at 73) (allowing for consideration of the offender's prior

8

adjudicated and unadjudicated offenses when weighing sentence severity). Therefore, we conclude that the trial court did not abuse its discretion in imposing the sentence it did. *See Ex parte Chavez*, 213 S.W.3d at 323; *Simpson*, 488 S.W.3d at 324. We overrule Sanchez's sole issue on appeal.

## III. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
26th day of March, 2020.