**Manuel QUINTANA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–88–414–CR.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1989.

John E. Wright, Malone, Walsh & Wright, Huntsville, for appellant.

David P. Weeks, Chief Prosecutor, Sp. Prosecution Unit, Huntsville, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

A jury found that appellant, Manuel Quintana, "knowingly and intentionally cause[d] the death of an individual, Manuel Viqueria Roman, by striking him with a metal dustpan." See Tex.Penal Code Ann. § 19.02(a)(1) (Vernon 1989). One prior felony offense was alleged in the indictment for enhancement purposes. After finding appellant guilty, the jury assessed punishment at ninety-nine years' confinement in the Texas Department of Corrections, plus a $10,000.00 fine. We modify and affirm.

Riley Bennett, a Texas Department of Corrections (TDC) guard, testified that on June 28, 1986, he heard a noise that sounded like somebody had inserted a rod into one of the fans. He saw inmates gathering around fifteen row and seventeen row. The noise stopped, and Bennett proceeded to investigate. As he went up some stairs, he saw appellant, a TDC inmate, coming down the stairs. Appellant wore a white, bloodstained uniform. Appellant remarked to Bennett, "He was ripping me off for my commissary." Bennett took him outside the tank and left him with other guards. Bennett resumed his investigation, and inside cell sixteen, he discovered Roman's body lying face down with a dustpan on his back.

Luther Andrew Masters, a general physician, testified that on June 28, 1986, he was summoned to Roman's cell. He entered the cell and found Roman lying face down. Copious amounts of blood covered the cell's bars, ceiling and walls. Dr. Masters looked into Roman's pupils, felt for his carotid and radial pulse, and listened to his chest with a stethoscope. He discovered no evidence of life.

Dr. Masters explained, in effect, that in a case like the one here, where blood is found on the ceiling and walls, this usually indicates that someone struck the victim by swinging an object in any arc like fashion. He agreed that the blood locations in this case are consistent with someone swinging the dustpan found at the scene.

Harris County's chief medical examiner, Joseph Alexander Jachimczyk, performed Roman's autopsy. He stated that Roman received approximately thirty wounds. Dr. Jachimczyk indicated that he found extension fractures at the base of Roman's skull. He explained that an extension fracture is one that results from a severe blow. Dr. Jachimczyk testified that Roman died due to a fractured skull. He said that the wounds Roman suffered are consistent with the type of wounds that could have been inflicted by the dustpan found at the scene.

Appellant explained that prior to the confrontation between himself and Roman, Roman had threatened his life on at least two occasions. On one occasion, appellant happened to be in the prison yard, and Roman threatened to kill him. On the second occasion, appellant was in the shower room, and Roman pulled down appellant's pants. When appellant asked him why he did this, Roman laughed and said he was going to kill appellant. Appellant stated that Roman had also stolen some property from him. Appellant said that he did not complain about these alleged problems to corrections officials because he did not expect that Roman was going to kill him.

Appellant testified that moments before the confrontation, he was standing at the cleaning room, cleaning a mop. When he turned around, he saw Roman running towards him, gripping a screwdriver. Not far away, some people were watching television. He yelled at them for help but no one responded. Appellant said that if he would have stood there, Roman would have killed him. He took a swing at Roman and ran away. He said that he first hit Roman

with the dustpan when Roman leaned back towards the bars by the television. Both men then began fighting outside Roman's cell. Roman dropped the screwdriver and pushed appellant, causing his head to strike the cell bars. Roman entered his cell, and appellant followed. Appellant testified that he did not remember whether he continued to hit Roman inside his cell. He also said that he did not remember saying anything when he came down the steps. However, he admitted saying that he killed Roman because Roman was stealing his commissary.

◼ Appellant, in his first two points of error, complains that because the trial court refused to instruct the jury that he had a right to arm himself, it erred by sentencing him to ninety-nine years' confinement with an affirmative finding that the dustpan was a "deadly weapon," stacked upon his present sixty-year sentence. The Court of Criminal Appeals has consistently held that unless the trial court's charge places some limitation upon the accused's right of self-defense, such as by a charge on provoking the difficulty or otherwise, a charge on the right to carry arms is not necessary. On the other hand, if the trial court's instruction limits the accused's right of self-defense by a charge on provoking the difficulty, then the jury should be advised in a proper instruction under the facts that the accused's right of self-defense would not necessarily be abridged by the fact that he carried arms to the scene of the difficulty if such instruction is supported by the evidence. *Young v. State*, 530 S.W.2d 120, 121–22 (Tex.Crim.App.1975).

◼ In the instant case, the trial court did not charge on provoking the difficulty, but it did give the following instruction:

You are further instructed as part of the law of this case, and as a qualification of the law on self-defense, that the use of force by a defendant against another is not justified if in response to verbal provocation alone.

Appellant contends that because the charge contains this particular instruction, the charge was a limiting one, and that the

instruction on the right to arm should have been given. We disagree. The trial court's self-defense charge was not limited in its general language. The self-defense charge was as full and broad a charge as is permitted by the present law on self-defense. Moreover, the self-defense charge was not limited in its application of the law to the specific facts. Appellant's theory of self-defense, so far as it was raised by the evidence, was presented without limitation in the charge.

◼ Furthermore, we note that the complained of instruction is a copy, in part, of Tex.Penal Code Ann. § 9.31(b)(1) (Vernon 1974), which provides that the use of force against another is not justified in response to verbal provocation alone. In *Barkley v. State*, 214 S.W.2d 287, 291 (Tex.Crim.App. 1948), the defendant complained that the trial court erred by declining to submit his special requested charge to the effect that if the deceased had threatened to take defendant's life, he would have a right under the law to arm himself for the purpose of protecting his life. The Court of Criminal Appeals stated in *Barkley* that the trial court gave a charge on the law of self-defense without any limitations whatever; therefore, the trial court did not have to submit defendant's special requested charge on the subject. The trial court's charge did contain the following instruction: "You are further instructed that where a defendant accused of murder seeks to justify himself on the grounds of threats against his own life, he is permitted to introduce evidence of the threats made, *but the same shall not be regarded as affording justification for the offense* unless it be shown that at the time of the homicide the person killed by some act then done manifested an intention to execute the threats so made, if made." (emphasis ours). *Barkley*, 214 S.W.2d at 291. This instruction is contextually similar to the complained of instruction in the case *sub judice*.

The rule requiring a charge on the right to arm grew out of cases where the accused sought out the victim for the purpose of correcting a wrong or demanding an

explanation. In such a case, the self-defense charge is usually limited by a charge on provoking the difficulty, because the accused is the initiator of the confrontation. In that situation, however, the accused is still entitled to that limited right of self-defense even though he carried a weapon to the confrontation, and the jury should be so instructed. *Sheppard v. State*, 545 S.W.2d 816, 820 (Tex.Crim.App.1977). In *Sheppard*, the Court of Criminal Appeals noted the absence of such a factual situation and stated that a charge on the right to arm was not required merely because the charge instructed on deadly force and obligation to retreat. *Id.* at 820. Also noteworthy in *Sheppard* is the fact that the trial court's charge contained the following language: "The use of force against another is not justified in response to verbal provocation alone."

Even though the defendants in *Barkley* and *Sheppard* did not specifically argue that the instructions on the law of self-defense pertaining to verbal threats entitled each to a special charge on the right to arm, the Court of Criminal Appeals was obviously aware, in both cases, that these instructions were included in the charges. We therefore hold that, in the absence of a charge on provoking the difficulty, the inclusion in the charge of an instruction on self-defense law pertaining to verbal threats is not such a limitation of the right of self-defense as requires the giving of a special charge on the right to arm. *See Sheppard*, 545 S.W.2d at 820; *Barkley*, 214 S.W.2d at 291. We overrule the first and second points of error.

■ By his third point of error, appellant complains that the trial court erred by making an affirmative finding of a deadly weapon where the evidence was insufficient to show that the dustpan used by appellant was a deadly weapon within the meaning of the law providing for more severe punishment of those found to have used the same.

In determining whether the trial court's deadly weapon finding was correct, we look to the definition of "deadly weapon." Tex.

Penal Code Ann. § 1.07(a)(11) (Vernon 1974) defines a deadly weapon as:

(A). a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Thus, to be a deadly weapon, the dustpan must either be "manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury," or be "in the manner of its use or intended use is capable of causing death or serious bodily injury." *Corte v. State*, 630 S.W.2d 690, 691 (Tex.App.—Houston [1st Dist.] 1981, pet. ref'd).

■ Although wounds need not be inflicted, injuries or wounds inflicted upon a victim are a factor to consider in determining whether a weapon qualifies as a deadly weapon. However, the most important criteria is the manner in which the weapon was used. *Denham v. State*, 574 S.W.2d 129, 130 (Tex.Crim.App.1978); *see also Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim.App.1983). In determining the deadliness of a weapon, the jury may consider all of the facts relevant to the case. *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App. 1983). The State's proof showed that Bennett found a dustpan laying on top of Roman's body. Dr. Jachimczyk testified that Roman received approximately thirty wounds to his body. Most of these wounds consisted of fractures, lacerations and abrasions. In fact, Dr. Jachimczyk's testimony indicates that Roman died due to a fractured skull. Dr. Jachimczyk stated that the wounds Roman sustained are consistent with the type of wounds that could have been inflicted by the dustpan found at the scene. The State admitted the dustpan into evidence as exhibit number four. This dustpan does not resemble a common, household dustpan; rather, it closely resembles a shovel. The dustpan has a long handle attached to a heavy metal scoop or blade.

Viewing the evidence in the light most favorable to the verdict, we conclude the

facts of this case, regarding the weapon's manner of use and intended use, were sufficient to allow the jury to find that the dustpan was a deadly weapon. *See Corte,* 630 S.W.2d at 691. We overrule appellant's third point of error.

By his fourth point of error, appellant argues that the trial court erred by sentencing him to ninety-nine years' confinement with an affirmative finding of a deadly weapon, stacked upon his present sentence. He contends that this sentence amounts to cruel and unusual punishment in violation of U.S. Const. amend. VIII, Tex.Const. art. I, § 13 (Vernon 1984) and Tex.Code Crim.Proc.Ann. Art. 1.09 (Vernon 1977).

The jury found that appellant used a deadly weapon to kill Roman. The jury also found that prior to the instant offense, appellant was duly and legally convicted of a felony less than capital. After arriving at these findings, the jury assessed punishment at ninety-nine years' confinement in the Texas Department of Corrections, plus a $10,000.00 fine. The document entitled "JUDGMENT ON PLEA OF NOT GUILTY BEFORE THE JURY PENALTY BY THE JURY—HABITUAL"[1] states that "the sentence pronounced herein shall begin when the sentence in Cause No. 42378–243 out of the 243rd District Court of El Paso County, Texas, given on the 7th day of March, 1985 for the offense of MURDER, for which ... [appellant] received 60 years, has ceased to operate."

■ Appellant did not raise in his motion for new trial or present at the punishment phase any objection based on the constitutional and statutory provisions on which he now raises in his appellate brief. In order to preserve a complaint for appellate review, a party *must* have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the trial court to make if the specific grounds were not apparent from the context. Tex.R.App.P. 52(a). Our law is well-established that almost every right, constitutional and statutory, may be waived by the failure to object. *Smith v. State,* 721 S.W.2d 844, 855 (Tex.Crim. App.1986); *Stevens v. State,* 667 S.W.2d 534, 538 (Tex.Crim.App.1984).[2]

■ Nevertheless, assuming that appellant had properly and sufficiently objected at trial and presented constitutional grounds for appellate review, we find no reversible error. Tex.Code Crim.Proc.Ann. art. 42.08 (Vernon Supp.1989) provides for the cumulation of sentences under specified circumstances. Article 42.08 states:

(a) When the same defendant has been convicted in two or more cases, judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction. Except as provided by Sections (b) and (c) of this article, in the discretion of the court, the judgment in the second and subsequent convictions may either be that the sentence imposed or suspended shall begin when the judgment and the sentence imposed or suspended in the preceding conviction has ceased to operate, or that the sentence imposed or suspended shall run concurrently with the other case or cases, and sentence and execution shall be accordingly; provided, however, that the cumulative total of suspended sentences in felony cases shall not exceed 10 years, and the cumulative total of suspended sentences in misdemeanor cases shall not exceed the maximum period of imprisonment in jail applicable to the misdemeanor offense, though in no event more than two years.

\*　　\*　　\*　　\*　　\*　　\*

1. Actually, appellant was convicted as a repeat offender, and the jury was properly instructed of the punishment range. The judgment of the trial court is modified to delete the term "habitual."

2. In *Stevens,* the defendant objected that his sentence for burglary, which was made cumulative with a prior burglary conviction and another sentence, was "in violation of the United States Constitution." The Court of Criminal Appeals stated that appellant's objection was not sufficiently specific to preserve error, did not completely comport with his point of error on appeal, and presented nothing for review. *Stevens,* 667 S.W.2d at 538.

Appellant's penitentiary packets admitted into evidence reflect that he was convicted of murder on March 5, 1985 and attempted rape on January 10, 1978. Therefore, the trial court had discretion to either order appellant's sentence to commence when his previous sentence ceased to operate, or to allow appellant's sentence to run concurrently with his previous sentence. Normally, a trial judge has *absolute* discretion to cumulate sentences, *Smith v. State*, 575 S.W.2d 41 (Tex.Crim.App.1979), and a criminal defendant has no "right" to a concurrent sentence. *Carney v. State*, 573 S.W.2d 24, 27 (Tex.Crim.App.1978).

Furthermore, the Court of Criminal Appeals has held that the cumulation of sentences does not constitute cruel and unusual punishment, *Stevens*, 667 S.W.2d at 538; *Baird v. State*, 455 S.W.2d 259 (Tex. Crim.App.1970), and that a forerunner of Article 42.08 does not violate Tex.Const. art. 1, § 13. *Lillard v. State*, 17 Tex.App. 114 (1884); *Shumaker v. State*, 10 Tex. App. 117 (1881); *see also Stevens*, 667 S.W.2d at 538.

Tex.Code Crim.Proc.Ann. art. 1.09 (Vernon 1977), forbids the infliction of cruel and unusual punishment. However, because the cumulation of sentences does not constitute cruel and unusual punishment, we hold that appellant's sentence does not violate Article 1.09. *See Stevens*, 667 S.W.2d at 538; *Baird*, 455 S.W.2d at 259.

Regarding appellant's Eighth Amendment complaint, the *United States Supreme Court in Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), held that the Eighth Amendment applies to the proportionality between sentences and crimes for which a defendant has been convicted. The Court set forth three factors for reviewing courts to apply in assessing the proportionality of sentences. Specifically, the Court determined that reviewing courts should consider the seriousness of the offense and the harshness of a penalty in a given case, the range of penalties for other crimes in the jurisdiction, and the penalties imposed for comparable crimes in other jurisdictions. In *Solem*, the Court applied these factors to invali-

date a life sentence without possibility of parole which had been imposed for the accused's false uttering of a $100.00 check.

The facts in the instant case hardly resemble the extreme facts in *Solem* and, therefore, deserve a different result. Here, appellant received a ninety-nine year sentence, with an affirmative finding, stacked upon a previous sixty-year sentence for murder. Appellant also had a previous conviction for attempted rape. The complained of sentence stemmed from a murder conviction, resulting from the vicious attack on a fellow inmate. Under these circumstances, we cannot conclude that appellant's sentence was disproportionate to his crime under the Eighth Amendment.

In so ruling, we note that the Supreme Court admitted in *Solem* that invalidation of sentences on grounds of disproportionality should be rare. *Solem*, 463 U.S. at 290 fn. 16, 103 S.Ct. at 3009 fn. 16. We defer to this reasoning, and, therefore, hold that the seriousness of appellant's crime justifies the sentence imposed. We conclude that appellant's sentence is not severe in comparison to sentences imposed for other crimes within this jurisdiction, and sentences imposed for similar crimes elsewhere. Accordingly, appellant's sentence did not amount to cruel and unusual punishment. We overrule appellant's fourth point of error.

■ By his fifth point of error, appellant complains that the trial court erred by making an affirmative finding of use of a deadly weapon as part of its judgment and sentence. Appellant argues that Tex.Penal Code Ann. § 1.07(a)(11) (Vernon 1974) violates U.S. Const. amends. V and XIV, Tex. Const. art. 1, § 19 (Vernon 1984) and Tex. Code Crim.Proc.Ann. art. 1.04 (Vernon 1984) because, from the language of § 1.07(a)(11), one cannot determine which items are deadly weapons and which items are not deadly weapons.

■ Appellant's argument, we believe, attacks § 1.07(a)(11) as unconstitutionally vague. In *Clark v. State*, 665 S.W.2d 476, 483 (Tex.Crim.App.1984), our Court of Criminal Appeals held that in a vagueness

challenge, where no First Amendment rights are involved, the reviewing court need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct. A vagueness challenge to an enactment will be upheld only if it is impermissibly vague in all of its applications. *Briggs v. State*, 740 S.W.2d 803, 806 (Tex. Crim.App.1987). Furthermore, when challenging the constitutionality of a statute, it is incumbent upon a defendant to show that in its operation, the statute is unconstitutional to him in his situation; that it may be unconstitutional regarding others is not sufficient. *Parent v. State*, 621 S.W.2d 796 (Tex.Crim.App.1981). A statute is unconstitutionally void for vagueness only when no standard of conduct is obtained at all or when no core of prohibited activity is defined. *Briggs*, 740 S.W.2d at 806.

Even though § 1.07(a)(11)(B) does not list items that could qualify as deadly weapons, the statute is precise in that it limits those items to "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." In the instant case, a jury found appellant guilty of killing a fellow inmate. According to the evidence adduced at trial, the dustpan is, in the manner of its use or intended use, capable of causing death or serious bodily injury. Section 1.07(a)(11)(B) clearly establishes a standard of conduct and a core of prohibited activity. *See Briggs*, 740 S.W.2d at 806. We therefore hold § 1.07(a)(11)(B) constitutional as applied to appellant. *See Clark*, 665 S.W.2d at 483. We overrule appellant's fifth point of error. The trial court's judgment is modified, to delete the term "habitual" from the judgment. As modified the judgment of the trial court is affirmed.