NUMBER
13-09-00554-CR

 

COURT
OF APPEALS

 

THIRTEENTH
DISTRICT OF TEXAS

 

                                  CORPUS
CHRISTI - EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JOE RICHARD JASSO,                                                                Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                
Appellee,

 

 



On
appeal from the 156th District Court

of Bee
County, Texas.

 

 



MEMORANDUM
OPINION

 

Before
Chief Justice Valdez and Justices Rodriguez and Benavides

Memorandum
Opinion by Chief Justice Valdez

 

Appellant, Joe Richard Jasso, was convicted of six counts
of aggravated sexual assault, a first-degree felony, and pleaded guilty to one
count of sexual assault, a second-degree felony.  See Tex. Penal Code Ann. §§ 22.011(a)(2),
(f), 22.021(a)(1)(B)(i), (2)(A)(ii), (e) (Vernon Supp. 2010).  Jasso was
sentenced to ninety-nine years’ incarceration plus a $10,000 fine for each count
of aggravated sexual assault and twenty years’ incarceration plus a $10,000
fine for the sexual assault count.  The trial court ordered that the sentences
for four of the aggravated sexual assault convictions (counts 1, 4, 8, and 9)
be served concurrently after the completion of a prior sentence in an unrelated
case and that the remaining convictions (counts 7, 10, and 11) be served
consecutively upon the completion of the concurrent sentences in counts 1, 4,
8, and 9.[1] 
By six issues, Jasso contends that:  (1) the evidence is legally and factually
insufficient “to support the conclusion that appellant is the ‘Joe Richard’ the
subject of the jury’s verdict of guilt in counts [1 and 4]”; (2) the evidence
is legally and factually insufficient “to support the jury’s verdict of guilt
regarding counts [1 and 4]”; (3) the trial court’s cumulation of the sentences
imposed for counts 7, 10, and 11 constitutes cruel and unusual punishment; and
(4) the trial court erred in cumulating the sentences with a prior sentence.  We
affirm.

I.             
Background

In this case, the State alleged that Jasso sexually
assaulted three girls:  A.L., S.K., and S.S.  At the time of the alleged
incidents, the girls were four, thirteen, and fourteen years old,
respectively.  The investigation into Jasso’s involvement began when Leo
Campos, the stepfather of A.L., wrote the Bee County District Attorney’s Office
(the “District Attorney’s Office”) describing a conversation he had with A.L.
when she visited him in jail.[2] 
In several letters written to the District Attorney’s Office, Campos stated
that A.L. had told him that “Joe” had touched her private parts and that “Joe”
told her that he would hurt her if she told anyone.  At trial, Campos testified
that when A.L. told him what had happened with “Joe,” he noticed “that
something was wrong with her” and that she appeared to be upset.

After receiving the letters from Campos, the District
Attorney’s Office forwarded the letters to the police, and the police began
investigating A.L.’s living situation.  The police later discovered that A.L.
lived with several other individuals in a house in Bee County, Texas.  Among
those living with A.L. was S.S., a girl whom A.L. refers to as her sister even
though the girls are not related.  S.S. testified that she was fourteen years
old when she first began dating Jasso in May 2004.  Jasso was twenty-two years
old at the time he and S.S. began their relationship.  S.S. had recently
attempted to commit suicide by ingesting numerous medications found in the
house, and she admitted that she had low self-esteem and enjoyed smoking
marihuana.  Jasso provided S.S. with marihuana regularly, and the two began having
sexual intercourse shortly after meeting one another in a park.  S.S. and Jasso
admitted at trial that Jasso penetrated S.S.’s sexual organ with his fingers
and penis two or three times each day that they were dating.  

S.S. noted that she had problems with her mother; that
her mother had “stopped paying attention to [her]”; and that her mother, D.S.,
did not initially approve of her dating Jasso.  Despite D.S.’s disapproval of
Jasso, he regularly stayed overnight with S.S. and woke in the morning to make
A.L. breakfast.  S.S. slept in very late each day, not waking until 3:00 or
4:00 in the afternoon.  S.S. also recalled that A.L. would often accompany S.S.
and Jasso when they would run errands for S.S.’s mother.  S.S. admitted to
smoking marihuana with Jasso while in front of A.L. and that she and Jasso
would buy A.L. candy and make her promise to keep S.S. and Jasso’s smoking
habits a secret.  S.S. testified that A.L. and Jasso “always played together”;
however, S.S. testified that shortly after she and Jasso broke up, A.L. told
her mother that Jasso had molested her.  S.S. noticed that A.L. would
masturbate when her mother was asleep and that she would play “dirty” with her
dolls.[3] 
S.S. recounted that her relationship with Jasso ended when he began dating
S.K., a girl who was several years younger than S.S.  S.S. stated that at the
time A.L. described the alleged molestation incident to Campos in September
2008, S.S. was dating Joe Richard Estrada and that A.L. was not living with
them.

D.S., S.S.’s mother and the foster mother of A.L.,
testified that she was aware of Jasso sneaking into the house to have sex with
S.S. and that she allowed it because she “didn’t want to lose [S.S. after her
suicide attempt] so I just let her do it.”  D.S. stated that A.L. always slept
in D.S.’s bedroom and that she did not suspect that anything had happened to
A.L. until A.L. made her outcry.  D.S. recalled that A.L. first told her about
the molestation incident after S.S. had told A.L. that she had seen Jasso at
the jail.  A.L. told D.S. that she did not say anything about the incident for
several years because Jasso had threatened to hurt A.L. or her family if she
said anything.  D.S. then testified to the following:

After
[S.S.] had said that she seen [sic] Joe [at the jail], a few days later [A.L.]
said that when she was living in Navy housing Joe Jasso had touched her or
touched her private area.  She said that he made her breakfast and took her to
the garage and told her to lay [sic] down and take her pants down.  Then he
started touching her around her vagina area.  Another time she said that he put
his fingers inside her vagina.

 

After
telling D.S. about the incident, A.L. became very afraid.  A.L. did not want to
go to the bathroom by herself or sleep by herself.  She also began to have
nightmares about Jasso.  D.S. stated that she was very upset about the incident
but that she did not have an opportunity to file a complaint with police before
Campos did.      

            S.K.,
a young girl who also had previously attempted to commit suicide, testified
that she and Jasso began dating when she was thirteen years old and was in the
seventh grade.  Their relationship began shortly after Jasso left S.S.  S.K.
acknowledged that she and Jasso drank alcohol and smoked marihuana together and
that Jasso would provide her with the alcohol and marihuana.  S.K. and Jasso
dated for approximately two months and had vaginal and/or oral sex between two
and four times a day.  S.K. noted that Jasso penetrated her sexual organ with
his fingers and penis when she was thirteen years old.

            Carol
Anne McLaughlin, a forensic nurse with the Driscoll Children’s Hospital,
examined A.L. after A.L. made her outcry.  McLaughlin testified that A.L. told
her the following during their interview:

The
history that I received from [A.L.] stated whenever we were at Capeheart
that was when it happened.  Those are her words.  Then she stated—and these are
her words, not mine—my mom was asleep.  I was getting up and he, Joe, made
me pancakes.

 

            .
. . .

 

He took
me to the garage and then he pulled my pants down.  I told him no.  He wouldn’t
listen.  He started playing with—he started rubbing me on my middle,
and she indicated her female sexual organ by pointing.  He sticked [sic] his
fingers inside me.  That’s when I yelled ow [sic].  He told me to shut up or he
would hit me.  He did this a lot of times.

 

(Emphasis
in original).  McLaughlin noted that A.L. appeared to be truthful and acted
“very age appropriate.”  A.L. “looked [McLaughlin] in the eye.  She [A.L.]
didn’t look at the floor.  She didn’t look past [McLaughlin], and she talked
well with [McLaughlin].”  McLaughlin then conducted an examination of A.L.’s
body and found no trauma.  However, McLaughlin noted that the area surrounding
the female sexual organ is membrane that heals very quickly and that the
incident had occurred about four years prior to her meeting with A.L.

            Steve
Liman, an investigator with the Bee County Sheriff’s Office, testified that he
received Campos’s letters that were forwarded along by the District Attorney’s
Office.  After receiving the letters, Liman visited Campos and took a statement
from him.  Liman also spoke to D.S. about A.L.’s outcry.  Liman acknowledged
that there were two individuals involved in this case that are named “Joe
Richard.”  Liman determined that Jasso is the “Joe Richard” who dated S.S. and
lived at the Capeheart house when the alleged incidents took place and that
Estrada is S.S.’s current boyfriend.  Estrada was ruled out as the “Joe
Richard” who allegedly molested A.L. because during 2004, when the alleged
incidents took place, Estrada was incarcerated.  Because of Estrada’s
incarceration at the time of the alleged incidents, Liman concluded that Jasso
was the perpetrator of these crimes.  Liman also interviewed S.S. and S.K.,
both of whom admitted to having sexual intercourse with Jasso.  These
admissions led to additional charges filed against Jasso.

            Liman
later recounted the arrest of Jasso for the alleged crimes.  Liman discovered
that Jasso fled Texas shortly after finding out that he had been indicted. 
Jasso was eventually apprehended in Nebraska for stealing liquor from a grocery
store, and he was extradited to Texas.  During an interview with Liman, Jasso
admitted to having sexual intercourse with S.S. but denied molesting A.L. 
Liman also testified that he was present during A.L.’s interview with
McLaughlin.  He recalled that A.L. “was worried or seemed worried that she was
going to have to confront Mr. Jasso. . . .  She didn’t want to see him. . . . 
Because I got the impression she is afraid of him from the threats he made.”        

A.L., nine years old at the time of trial, testified that
she lived in a house located in the Capeheart subdivision with several people,
including D.S., S.S., and, for a time, Jasso.  A.L. noted that she would wake
up early in the morning, while D.S. was still asleep.  A.L. recalled that at
the time of the incidents, she usually went into the living room to watch
cartoons when she awoke.  A.L. noted that Jasso would awake at about the same
time as she and would go to the restroom.  He would then call for her to follow
him, and he would make her pancakes for breakfast.  A.L. remembered that after
breakfast, Jasso would take her into the garage and “pull up [her] nightgown .
. . take down [her] underwears [sic]” and then “lay [her] down” on the sofa in
the garage.  Jasso would then “start rubbing” A.L. with his fingers on the
outside of A.L.’s sexual organ.  A.L. then testified that Jasso stuck his
finger inside her sexual organ one time, which caused her to scream.  When A.L.
screamed, Jasso put his hand over A.L.’s mouth and told her to shut up.  A.L.
later noted that Jasso took her into the garage and molested her “more than
once” and that he stuck his finger inside her “[p]robably two or three
[times].”  A.L. testified that Jasso threatened her and told her that “he would
kill my family and my sister and me” if she told anyone about what was
happening.  A.L. explained that she did not tell anyone about the incident for
a long time because she was scared that Jasso would “watch” her and kill her
family.

A.L. finally told her family about the incidents when
S.S. mentioned that she had seen Jasso in jail.  When she first told her story,
A.L. identified the perpetrator as “Joe,” not “Joe Richard” or “Joe Jasso.”  On
cross-examination, A.L. admitted that she learned the word, “Jasso,” from S.S.
and D.S. and that she did not know Jasso’s full name.  However, in open court,
A.L. identified Jasso as the man who molested her.  A.L. testified that when
she told Campos that she was molested by S.S.’s boyfriend, she did not mean Estrada. 
A.L. further testified that Estrada had not made her breakfast or pancakes, nor
had he touched her inappropriately.  A.L. stated that Estrada never lived with
the family in the Capeheart subdivision; that Jasso did, for a time, live with
the family in the Capeheart subdivision; and that the molestation occurred when
the family lived in the Capeheart subdivision.  

Jasso testified in his own defense.  Jasso noted that he
was previously employed as a breakfast “chef” at the “My Country Kitchen
Restaurant.”  Jasso denied ever living at the house in the Capeheart
subdivision and, instead, noted that he “visited every once in a while.”  Jasso
admitted to having sexual intercourse with S.S. three or four times; however,
he denied touching A.L. inappropriately or having sexual intercourse with S.K. 
Jasso acknowledged that he had been arrested several times before and that he
“absconded” shortly after being indicted because he had a “dirty UA” that would
have resulted in a probation violation.  Jasso testified that he only made A.L.
pancakes once and that after making the pancakes, he had to leave quickly
because he was running late for work. 

On cross-examination, Jasso admitted that he was
twenty-two years old when the alleged incidents transpired, even though he told
police that he was nineteen.  Jasso did not believe that there was anything
wrong with having sex with S.S. because he was allegedly told by D.S. that S.S.
was seventeen years old.  Also on cross-examination, Jasso acknowledged several
other inconsistencies between his trial testimony and statements made to
police, including the description of incidents where Jasso stole money and
property from the families of the girls he was dating and how often he made
pancakes for S.S.’s family.[4]


After hearing all of the above-mentioned evidence, the
jury convicted Jasso of six counts of aggravated sexual assault, and Jasso
pleaded guilty to one count of sexual assault.  Jasso received ninety-nine-year
sentences for each of the aggravated sexual assault counts and a twenty-year
sentence for the sexual assault count.  The trial court ordered some of the
counts to run concurrently, while other counts were ordered to run
consecutively.  

On August 25, 2009, Jasso filed a pro se motion for new
trial arguing that he did not receive a fair trial and that his trial counsel
was ineffective.  Because the trial court did not rule on Jasso’s pro se motion
for new trial, it is deemed overruled by operation of law.  See Tex. R. App. P. 21.8(a), (c); see
also State v. Gutierrez, 143 S.W.3d 829, 831 (Tex. App.–Corpus Christi
2004, no pet.).  This appeal ensued.

II.           
Sufficiency of the Evidence

In
his first two issues, Jasso asserts that the evidence supporting his conviction
for counts 1 and 4 is legally and factually insufficient because the record
demonstrates that in addition to Jasso, S.S. dated another individual with a
similar name, Estrada, and that A.L.’s outcry, which was made several years
after the alleged incident, actually referenced Estrada rather than Jasso.[5]  In his third
and fourth issues, Jasso contends that the evidence supporting his conviction
for counts 1 and 4 is legally and factually insufficient because the record
does not demonstrate that Jasso used his finger to penetrate A.L.’s sexual
organ on two different occasions. 

A.  
      Applicable Law

The
court of criminal appeals has recently held that there is “no meaningful
distinction between the Jackson v. Virginia legal sufficiency standard
and the Clewis factual-sufficiency standard” and that the Jackson standard
“is the only standard that a reviewing court should apply in determining
whether the evidence is sufficient to support each element of a criminal
offense that the State is required to prove beyond a reasonable doubt.”  Brooks
v. State, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240, at **25-26, *57
(Tex. Crim. App. Oct. 6, 2010) (plurality opinion).  Accordingly, we review
Jasso’s claims of evidentiary sufficiency under “a rigorous and proper
application” of the Jackson standard of review.  Id. at *37, *57.

Under the Jackson standard, “the relevant question
is whether, after viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S.
307, 319 (1979); see Brooks, 2010 Tex. Crim. App. LEXIS 1240, at *14
(characterizing the Jackson standard as:  “Considering all of the
evidence in the light most favorable to the verdict, was a jury rationally
justified in finding guilt beyond a reasonable doubt”).  “[T]he fact[-]finder’s
role as weigher of the evidence is preserved through a legal conclusion that
upon judicial review all of the evidence is to be considered in the
light most favorable to the prosecution.”  Jackson, 443 U.S. at 319
(emphasis in original); see Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979) (“The jury, in all
cases is the exclusive judge of facts proved and the weight to be given to the
testimony . . . .”); Wesbrook v. State, 29 S.W.3d
103, 111 (Tex. Crim. App. 2000) (“The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given testimony, and it is
also the exclusive province of the jury to reconcile conflicts in the
evidence.”).

Sufficiency of the evidence is measured by the elements
of the offense as defined by a hypothetically correct jury charge.  Curry v.
State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000); Adi v. State, 94
S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref’d).  Under a
hypothetically correct jury charge, the State was required to prove beyond a
reasonable doubt that Jasso (1) intentionally or knowingly (2) “cause[d] the
penetration of the anus or sexual organ of a child by any means.”[6]  Tex. Penal Code Ann. § 22.021(a)(2)(B)(i). 
“A person acts intentionally, or with intent, with respect to the nature of his
conduct or to a result of his conduct when it is his conscious objective or
desire to engage in the conduct or cause the result.”  Id. § 6.03(a)
(Vernon 2003).  “A person acts knowingly with respect to a result of his
conduct when he is aware that his conduct is reasonably certain to cause the
result.”  Id. § 6.03(b).  Intent may “be inferred from circumstantial
evidence[,] such as acts, words, and the conduct of the appellant.”  Guevara
v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); see Hart
v. State, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (stating that a
fact-finder may infer both knowledge and intent from the defendant’s acts,
words, or conduct and from the nature of the wounds inflicted on the victim); Hernandez
v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); Ledesma v. State,
677 S.W.2d 529, 531 (Tex. Crim. App. 1984) (noting that the requisite culpable
mental state may be inferred from the surrounding circumstances).

The
State is not required to present direct evidence to establish guilt.  See
Guevara, 152 S.W.3d at 49.  “Circumstantial evidence is as probative as
direct evidence in establishing the guilt of the actor, and circumstantial
evidence alone can be sufficient to establish guilt.”  Hooper v. State,
214 S.W.3d 9, 13 (Tex. Crim. App. 2007); see Guevara, 152 S.W.3d at 49. 
The law does not require that each fact “point directly and independently to
the guilt of the appellant, as long as the cumulative effect of all the
incriminating facts is sufficient to support the conviction.”  Hooper,
214 S.W.3d at 13; see Guevara, 152 S.W.3d at 49.

B.         Identity

In his first two issues, Jasso complains that the
evidence is insufficient to support the jury’s finding that he was the
perpetrator of the alleged offenses.  Essentially, Jasso challenges the
identity element of the aggravated sexual assault offenses charged in counts 1
and 4.  The identity of a perpetrator in a sexual assault case may be proven by
either direct or circumstantial evidence.  See Earls v. State, 707
S.W.2d 82, 85 (Tex. Crim. App. 1986); Roberson v. State, 16 S.W.3d 156,
157 (Tex. App.–Austin 2000, pet ref’d); Couchman v. State, 3 S.W.3d 155,
162 (Tex. App.–Fort Worth 1999, pet ref’d); see also Ficarro v. State,
No. 13-03-00439-CR, 2007 Tex. App. LEXIS 3166, at *11 (Tex. App.–Corpus Christi
Apr. 26, 2007, pet. ref’d) (mem. op., not designated for publication).  

Here, Campos, D.S., and McLaughlin testified that A.L.
identified the individual who molested her as “Joe” and that the incidents
transpired during the summer of 2004.  At that time, Jasso was living in, or,
at least, was a frequent visitor to, the same household as S.S., A.L., and
D.S.  S.S. did not begin to date Estrada until several years after the incident
transpired, and Detective Liman testified that Estrada was incarcerated in
2004, meaning Estrada could not have committed the alleged offenses.  Furthermore,
A.L., in her outcry statement, noted that “Joe” made her pancakes and then proceeded
to molest her in the garage.  Jasso testified that he was a breakfast “chef”
and that he made A.L. and the rest of the family pancakes on one occasion, even
though he expressed to police shortly after being extradited back to Texas that
he had made pancakes for the family several times.  Moreover, and perhaps most
importantly, A.L. testified at trial that Estrada was not the individual who
molested her, and she identified Jasso in open court as the perpetrator.

Nevertheless, Jasso asserts that the evidence is
insufficient to support the jury’s conclusion that he was the perpetrator
because A.L.’s outcry statements were made in the present tense, suggesting
that the offenses did not occur until 2007, when Estrada was S.S.’s boyfriend.[7]  Jasso also
argues that A.L. was supplied the name, “Jasso,” by S.S. and D.S. and that
neither S.S. nor D.S. believed A.L. at first.  Jasso’s arguments touch on the
weight of the evidence and the credibility of the witnesses, especially A.L. 
Such determinations are solely within the province of the jury, and we must defer
to the jury’s resolution of the inconsistent testimony.  See Jackson,
443 U.S. at 318-19; Wesbrook, 29 S.W.3d at 111; see also Render v.
State, 316 S.W.3d 846, 859 (Tex. App.–Dallas 2010, pet. ref’d) (“An
appellate court must give deference to a jury’s decision regarding what weight
to give contradictory testimonial evidence because the decision is most likely
based on an evaluation of credibility and demeanor, which the jury is in a
better position to judge.”) (citing Lancon v. State, 253 S.W.3d 699, 706
(Tex. Crim. App. 2008)).  Moreover, it was not incumbent upon the State to
exclude “every reasonable hypothesis other than guilt” for the evidence to be
considered sufficient.  See Geesa v. State, 820 S.W.2d 154, 157-61 (Tex.
Crim. App. 1991), overruled on other grounds by Paulson v. State, 28
S.W.3d 570, 571 (Tex. Crim. App. 2000); see also Lopez v. State, 267
S.W.3d 85, 97-98 (Tex. App.–Corpus Christi 2008, no pet.) (citing Harris v.
State, 133 S.W.3d 760, 763-65 (Tex. App.–Texarkana 2004, pet. ref’d); Richardson
v. State, 973 S.W.2d 384, 387 (Tex. App.–Dallas 1998, no pet.) (“[T]he mere
existence of an alternative reasonable hypothesis does not render the evidence
. . . insufficient. . . .  [E]ven when an appellant identifies an alternative
reasonable hypothesis raised by the evidence, the standard of review remains
the same.”); Orona v. State, 836 S.W.2d 319, 322 (Tex. App.–Austin 1992,
no pet.)).  

Therefore, viewing all of the evidence in the light most
favorable to the prosecution, we conclude that the jury was rationally
justified in determining that Jasso was the perpetrator of the alleged offenses
against A.L. beyond a reasonable doubt.  See Jackson,
443 U.S.at 319; Earls, 707 S.W.2d at 85; Roberson,
16 S.W.3d at 157; Couchman, 3 S.W.3d at 162; see also Brooks,
2010 Tex. Crim. App. LEXIS 1240, at *14; Ficarro,
2007 Tex. App. LEXIS 3166, at *11.  Accordingly, we overrule Jasso’s first and
second issues.

C.  
      Evidence
of Digital Penetration

By his third and fourth issues, Jasso argues that the evidence
is insufficient to support his convictions as to both counts 1 and 4.  Count 1
of the indictment provided that, on or about May 16, 2004, Jasso intentionally
or knowingly caused the penetration of A.L.’s sexual organ with his finger, and
he threatened or placed A.L. “in fear that death would be imminently inflicted
on [A.L.] or [D.S.].”  See Tex.
Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(A)(ii).  Count 4 of the
indictment mirrored count 1 except that it alleged that the offense occurred on
or about May 18, 2004.  See id.  The State essentially alleged in the
indictment that Jasso penetrated A.L.’s sexual organ and threatened her at
least on two occasions.  On appeal, Jasso contends that the evidence
demonstrates that A.L. was only penetrated once; he does not challenge the
second portion of each count pertaining to the threats.  Jasso also suggests
that the “rubbing” of A.L.’s sexual organ that allegedly occurred several times
really amounted to indecency with a child, an offense which was not alleged in
the indictment.  See id. § 21.11(a) (Vernon Supp. 2010).[8] 

In the instant case, A.L. first testified that Jasso
penetrated her sexual organ only one time.  However, she later clarified that
the penetration occurred “more than once.”  When asked to describe the
incidents for a third time, A.L. stated that the penetration took place
“probably two or three times.”  In addition, McLaughlin testified earlier that
A.L. told her that:  “[Jasso] sticked [sic] his fingers inside me.  That’s when
I yelled ow [sic].  He told me to shut up or he would hit me.  He did this a
lot of times.”  By stating that Jasso “did this a lot of times,” A.L.
confirmed to McLaughlin that Jasso penetrated her sexual organ with his finger
many times.  

We first note that the testimony of a child victim
typically is sufficient to support a conviction for aggravated sexual assault. 
See Tex. Code Crim. Proc. Ann.
art. 38.07 (Vernon 2005); Perez v. State, 113 S.W.3d 819, 838 (Tex.
App.–Austin 2003, pet. ref’d), overruled in part on other grounds by Taylor
v. State, 268 S.W.3d 571 (Tex. Crim. App. 2008); Karnes v. State,
873 S.W.2d 92, 96 (Tex. App.–Dallas 1994, no pet.) (“[T]he testimony of a
sexual assault victim alone is sufficient evidence of penetration to support a
conviction, even if the victim is a child.”); see also Fernandez v. State,
No. 13-09-168-CR, 2010 Tex. App. LEXIS 6741, at *11 (Tex. App.–Corpus Christi
Aug. 19, 2010, no pet.) (mem. op., not designated for publication).  Further,
courts give wide latitude to the testimony given by child victims of sexual
abuse.  See Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim. App.
1990) (en banc).  “The victim’s description of what happened to [her] need not
be precise, and [she] is not expected to express [herself] at the same level of
sophistication as an adult.”  Ozuna v. State, 199 S.W.3d 601, 606 (Tex.
App.–Corpus Christi 2006, no pet.) (citing Villalon, 791 S.W.2d at 134). 


Here, there is only one instance where A.L. alleged that
Jasso penetrated her sexual organ on one occasion.  A.L. made two other
statements later in her testimony, and she conveyed to McLaughlin that Jasso
penetrated her sexual organ several times.  Regardless, this apparent
inconsistency in A.L.’s testimony was within the province of the jury to
resolve, and, once again, we are to defer to the jury’s resolution of the
inconsistency.  See Jackson, 443 U.S. at 318-19; Lancon, 253
S.W.3d at 706; Wesbrook, 29 S.W.3d at 111; see also Render, 316
S.W.3d at 859.  In convicting Jasso of both counts 1 and 4, the jury clearly
accorded more weigh to A.L.’s later testimony and statements to McLaughlin that
Jasso penetrated her sexual organ on a number of occasions rather than her
apparently imprecise initial statement that the penetration only occurred once. 
See Villalon, 791 S.W.2d at 134; see also Ozuna, 199 S.W.3d at
606.

Viewing all of the evidence in the light most favorable
to the prosecution, we conclude that the jury was rationally justified in
concluding that Jasso penetrated A.L.’s sexual organ using his fingers on more
than one occasion.  See Tex.
Penal Code Ann. § 22.021(a)(1)(B)(i); Jackson,
443 U.S.at 319; Perez, 113 S.W.3d at 838; see
also
Brooks, 2010
Tex. Crim. App. LEXIS 1240, at *14; Fernandez, 2010 Tex. App. LEXIS
6741, at *11.  Moreover, because we have concluded that the evidence
supporting Jasso’s convictions for the aggravated sexual assault of A.L. is
sufficient, and because “[s]exual contact or exposure that occurs in the course
of an act of sexual penetration is subsumed in the completed act,” we need not
address his contention regarding indecency with a child.  Soto v. State,
267 S.W.3d 327, 343 (Tex. App.–Corpus Christi 2008, no pet.) (citing Patterson
v. State, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004)); see Tex. R. App. P. 47.1 (“The court of
appeals must hand down a written opinion that is as brief as practicable but
that addresses every issue raised and necessary to final disposition of the
appeal.”).  Accordingly, we overrule Jasso’s third and fourth issues. 

III.          
Jasso’s Punishment and the Eighth Amendment

of the United States
Constitution

By his fifth issue, Jasso asserts that the cumulation of
his sentences violates the Eighth Amendment’s ban of cruel and unusual
punishments.  See U.S. Const. amend. VIII.  He also
argues that the punishment was grossly disproportionate to the seriousness of
the offenses.  The Eighth Amendment of the United States
Constitution provides that “[e]xcessive bail shall not be required, nor
excessive fines imposed, nor cruel and unusual punishment inflicted.”  Id.;
see Robinson v. California, 370 U.S. 660, 675 (1962).  The Eighth
Amendment is applicable to punishments imposed by state courts through the Due
Process Clause of the Fourteenth Amendment.  Robinson, 370 U.S. at 675; see
U.S. Const. amend. XIV.

In the instant case, Jasso did not object to his sentence
in the trial court, and he did not file any post-trial motions or objections
complaining that his sentence was either disproportionate to the seriousness of
the offenses, or complaining about the disparity, cruelty, unusualness, or
excessiveness of the sentence.  To preserve error for appellate review, a party
must present a timely objection to the trial court, state the specific grounds
for the objection, and obtain a ruling.  Tex.
R. App. P. 33.1(a); Dixon v. State, 2 S.W.3d 263, 265 (Tex. Crim.
App. 1998).  The failure to specifically object to an alleged disproportionate
sentence in the trial court or in a post-trial motion waives any error for our
review.  Jacoby v. State, 227 S.W.3d 128, 130 (Tex. App.–Houston [1st
Dist.] 2006, pet. ref’d); see Nicholas v. State, 56 S.W.3d 760, 768
(Tex. App.–Houston [14th Dist.] 2001, pet. ref’d) (holding that a failure to
complain to the trial court about a consecutive sentence waives error); Solis
v. State, 945 S.W.2d 300, 301-02 (Tex. App.–Houston [1st Dist.] 1997, pet.
ref’d) (holding that a claim of a grossly disproportionate sentence violative
of the Eighth Amendment was forfeited by failing to object in the trial court);
see also Trevino v. State, Nos. 13-07-737-CR & 13-07-738-CR, 2008
Tex. App. LEXIS 5123, at *3 (Tex. App.–Corpus Christi July 3, 2008, pet. ref’d)
(mem. op., not designated for publication).  Because he did not object to the
alleged disproportionality of his sentence in the trial court or raise the
issue in a post-trial motion, we conclude that Jasso has not preserved this
issue for appellate review.  See Tex.
R. App. P. 33.1(a); see also Jacoby, 227 S.W.3d at 130.

Assuming, however, that Jasso had preserved the issue for
appellate review, we conclude that his consecutive sentence did not violate the
Eighth Amendment and was not disproportionate to the serious of the offenses. 
Jasso
argues that his sentence is grossly disproportionate and constitutes cruel and
unusual punishment because, by stacking his sentences, the trial court imposed
“a term of over 300 years.”  Jasso asserts that this punishment amounts to
“[l]ife without parole” and, therefore, “is not within the punishment range for
these types of offenses.”  

            The
cumulation of sentences does not constitute cruel and unusual punishment. See
Stevens v. State, 667 S.W.2d 534, 538 (Tex. Crim. App. 1984); Quintana
v. State, 777 S.W.2d 474, 480 (Tex. App.–Corpus Christi 1989,
pet. ref’d); see also Rueda v. State, No. 13-07-517-CR, 2008 Tex. App.
LEXIS 5121, at *5 (Tex. App.–Corpus Christi July 3, 2008, pet. ref’d) (mem.
op., not designated for publication).  “Normally,
the trial judge has absolute discretion to cumulate sentences.”  Smith v.
State, 575 S.W.2d 41, 41 (Tex. Crim. App. 1979); see Green v. State,
706 S.W.2d 653, 656 (Tex. Crim. App. 1986); Quintana, 777 S.W.2d at
480.  A trial court has the discretion to either order a defendant’s sentence
to begin when his previous sentence ends, or to allow the defendant’s sentence
to run concurrently with his previous sentence.  See Tex. Code Crim. Proc. Ann. art. 42.08[9]; Quintana,
777 S.W.2d at 480.  Further, a criminal defendant does not have a right to a
concurrent sentence.  Carney v. State, 573 S.W.2d 24, 27 (Tex. Crim.
App. 1978); Quintana, 777 S.W.2d at 480.

Jasso was convicted of six counts of aggravated sexual
assault, a first-degree felony, and one count of sexual assault, a
second-degree felony.  See Tex. Penal Code Ann. §§ 22.011(a)(2),
(f), 22.021(a)(2)(B), (e).  The punishment range for a first-degree
felony is “imprisonment . . . for life or for any term not more than 99 years
or less than 5 years,” id. §
12.32(a) (Vernon Supp. 2010), and the range for a second-degree felony is
“imprisonment . . . for any term of not more than 20 years or less than 2
years.”  Id. § 12.33(a) (Vernon Supp. 2010).  Here, the trial court
sentenced Jasso to ninety-nine years’ imprisonment for each first-degree felony
and twenty years’ imprisonment for the second-degree felony.  Further, to the
extent that Jasso argues that the cumulation of his sentences amounts to a life
sentence, such sentence is within the punishment range for a first-degree
felony, and as previously stated, Jasso was convicted of six first-degree
felonies.  See id. § 12.32(a).  Punishment
assessed within the statutory limits is generally not cruel and unusual
punishment.  See Harris v. State, 656 S.W.2d 481, 486 (Tex. Crim. App.
1983) (holding that a punishment that falls within the limits prescribed by a
valid statute is not excessive, nor cruel or unusual)[10]; Samuel v.
State, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972); Swinney v. State,
828 S.W.2d 254, 259 (Tex. App.–Houston [1st Dist.] 1992, no pet.); see also
Trevino, 2008 Tex. App. LEXIS 5123, at *4.

Jasso also argues that his sentences are disproportionate
and essentially asks this Court to apply the Solem proportionate
analysis test to his sentence.  See Solem v. Helm, 463 U.S. 277, 290-92
(1983).  This Court has previously recognized that “the viability and mode of
application of proportionate analysis . . . has been questioned since the
Supreme Court’s decision in Harmelin v. Michigan, 501 U.S. 957 (1991).” 
Trevino v. State, 174 S.W.3d 925, 928 (Tex. App.–Corpus Christi 2005,
pet. ref’d) (citing McGruder v. Puckett, 954 F.2d 313, 315-16 (5th Cir.
1992) (discussing the various opinions issued in Harmelin and their
impact on the Solem decision)); see Sullivan v. State, 975 S.W.2d
755, 757-58 (Tex. App.–Corpus Christi 1998, no pet.) (discussing the
implications of the Harmelin opinion and reviewing the proportionality
of appellant’s sentence under the Solem and McGruder tests). 
Assuming, arguendo, the viability of proportionality review, we will apply both
the Solem and McGruder tests to the facts of this case.  See
Sullivan, 975 S.W.2d at 757-58; see also Trevino, 2008 Tex. App.
LEXIS 5123, at *5.  In both Solem and McGruder, we look first at
the gravity of the offense and the harshness of the penalty.  Solem, 463
U.S. at 290-91; McGruder, 954 F.2d at 316.

A.        Gravity
of the Offense

Jasso asserts that his punishment is disproportionate to
the gravity of the offense because he engaged in “consensual sex with teenage
girls, self-described by one as ‘wild’” and “was never accused of physically
abusing, dominating or intimidating [S.K.] or [S.S.].”  Jasso’s
sexual assault convictions are derived from his sexual relationships with
four-year-old, A.L., thirteen-year-old, S.K., and fourteen-year-old, S.S.  In
Texas, “a child under fourteen cannot legally consent to sex.”  May v. State,
919 S.W.2d 422, 424 (Tex. Crim. App. 1996).  However, affirmative defenses to
sexual assault are available if the child is at least fourteen, such
as when the accused is no more than three years older than the child, or when
the accused is the child’s spouse.  See Tex. Penal Code Ann. § 22.011(e). 
In the present case, no such defenses were asserted.  Thus, Jasso’s assertion
that his sexual relationships with A.L., S.K., or S.S. were consensual is
unfounded.  See id.; see also May, 919 S.W.2d at 424.

As previously discussed, the evidence at trial was
sufficient to prove that, on more than one occasion, Jasso penetrated A.L.’s
sexual organ with his fingers.  Further, Jasso does not argue that the evidence
is insufficient to support his four convictions for the aggravated sexual
assault of S.K., and Jasso pleaded guilty to sexually assaulting S.S.  Neither
aggravated sexual assault nor sexual assault requires physical abuse,
domination, or intimidation.  See Tex. Penal Code Ann. §§ 22.011(a)(2),
22.021(a)(2)(B).  Moreover, we judge the gravity of the offense
in light of the harm caused or threatened to society and the offender’s
culpability.  Moore v. State, 54 S.W.3d 529, 542 (Tex. App.–Fort Worth
2001, pet. ref’d) (citing Solem, 463 U.S. at 291-92).  Jasso’s six
aggravated sexual assault convictions and one sexual assault conviction were
based on evidence that he preyed on young, under-aged girls and engaged in
sexual acts with these girls on numerous occasions within approximately a one
to two month time period.  Based on the foregoing, we conclude that the gravity
of the offense weighs in favor of a finding that the punishment was not
excessive.    

B.        Harshness
of the Penalty

When conducting an Eighth Amendment proportionality
analysis, we may consider the sentence imposed in light of the accused’s prior
offenses.  Winchester v. State, 246 S.W.3d 386, 390 (Tex. App.–Amarillo
2008, pet. ref’d); Culton v. State, 95 S.W.3d 401, 403 (Tex. App.–Houston
[1st Dist.] 2002, pet. ref’d).  At the punishment phase of trial, the State
presented evidence that Jasso was previously convicted of eight counts of
forgery, a state-jail felony.  See Tex.
Penal Code Ann. § 32.23(b), (d) (Vernon Supp. 2010).  In
light of the seriousness of Jasso’s six aggravated sexual assault and one
sexual assault conviction, as well as the evidence of his eight prior forgery
offenses, we cannot say that his “life sentence” is excessive.  We therefore
conclude that his punishment is not grossly disproportionate to the offense for
which he was convicted.

Moreover, because there is no evidence in the appellate
record of the sentences imposed for other similar crimes in Texas or for the
same crimes in other jurisdictions, we cannot perform a comparative evaluation
using the remaining Solem factors.  See Solem, 463 U.S. at 292; see
also Sullivan, 975 S.W.2d at 757-58.  Therefore, we conclude that Jasso’s
sentence is neither grossly disproportionate nor cruel and unusual. 
Accordingly, Jasso’s fifth is overruled. 

IV.         
The Trial Court’s Cumulation of
the Sentences With a Prior Sentence

By his sixth issue, Jasso asserts that the trial court
abused its discretion by ordering his sentence in this case to run consecutive
to a prior sentence received in trial court cause number B-04-2061-0-CR-B for
eight counts of forgery.  Specifically, Jasso contends that the State failed to
affirmatively prove that Jasso was the individual sentenced on the forgery
counts.

At
the time of sentencing, the record must contain at least “some evidence”
linking the defendant to the prior conviction.  Miller v. State, 33
S.W.3d 257, 261 (Tex. Crim. App. 2000).  The burden is on the State to present
this evidence, and the defendant has no obligation to prove he has no prior
convictions.  Turner v. State, 733 S.W.2d 218, 223 (Tex. Crim. App.
1987).  During the punishment phase of the trial, the State introduced a copy
of Jasso’s conviction for eight counts of forgery in trial court cause number
B-04-2061-0-CR-B.  The copy of the judgment was admitted without objection; the
State did not offer testimony that Jasso is the same defendant convicted in
trial court cause number B-04-2061-0-CR-B.  However, before the trial court
ordered trial court cause number B-09-2120-0-CR-B to run consecutive to trial
court cause number B-04-2061-0-CR-B, the following exchange occurred:

The
Court:                 All right. . . . I think the State had filed a motion to
have the sentence [in trial court cause number B-09-2120-0-CR-B] accumulated.

 

[State]:                        Yes,
your Honor, we did.

 

The
Court:                 I’m going to review your motion.

 

[State]:                        Yes,
ma’am.

 

The
Court:                 What is on 04-2061?  Is that the—

 

[State]:                        That’s
the state jail felony, your Honor.  May I approach, your Honor?

 

The
Court:                 Is he serving time on that now?

 

[State]:                        He
was revoked on both of those.

 

The
Court:                 I know, but are you done?  Are you done with those?

 

[State]:                        He
has been getting credit for time, Judge.  It was revoked.

 

[Defense
Counsel]: He’ll probably discharge that this month or next month.

 

In Miller,
the Texas Court of Criminal Appeals held that admissions by the defendant’s
lawyer that the defendant “was currently serving 30 years for two prior
convictions” constituted admissions that the defendant “indeed had the two
prior convictions” set out in the State’s motion to cumulate.  See Miller,
33 S.W.3d at 262.  Similarly, in the present case, defense counsel’s admission
that Jasso would be discharging the forgery sentence imposed in trial court
cause number B-04-2061-0-CR-B constitutes an admission that Jasso is the
defendant named in the present case.  See id.  Thus, we
conclude the trial court did not abuse its discretion because there was
sufficient evidence before it to properly order the sentences to run
consecutively.  We overrule Jasso’s sixth issue.

V.          
Conclusion

Having overruled all of Jasso’s issues on appeal, we
affirm the judgment of the trial court.

                                                                                    _________________

Rogelio Valdez

                                                                                                Chief
Justice

 

Do not publish. 

Tex. R. App.
P. 47.2(b)

Delivered and filed the 

6th day of January, 2011.

 









[1] The trial court
ordered:

 

This sentence shall begin upon the
completion of sentence in Bee County, Texas cause no. B-04-2061-CR-B.  The
sentences in Counts 1, 4, 8 & 9 shall run concurrently.  The sentences in
Counts 7, 10 & 11 shall run consecutively—with the sentence in Count 11 to
begin upon the completion of the concurrent sentences in Counts 1, 4, 8 &
9.  The sentence in Count 7 shall begin upon the completion of the sentence in
Count 11.  The sentences in Count 10 shall begin upon the completion of the
sentence in Count 7 . . . .

 





[2] Campos is
currently serving a thirty-five year prison sentence for what he described as
“a cocaine charge.”





[3] S.S. explained
that playing “dirty” with the dolls meant getting “them naked, and there were
times when she [A.L.] would put their heads between their legs . . .
[b]etween—the male doll’s head between the girl’s legs.”





[4] With respect to
the pancakes, Jasso stated at trial that he only made the family pancakes once;
however, he told police that he made the family pancakes “a couple times.”





[5] On appeal, Jasso
does not challenge the sufficiency of the evidence pertaining to his
convictions for the aggravated sexual assault of S.K.—counts 7, 8, 9, and 10—or
for the sexual assault of S.S.—count 11.





[6] A “child” is
defined as “a person younger than 17 years of age.”  Tex. Penal Code Ann. §§ 22.011(c), 22.021(b)(1) (Vernon Supp.
2010).  Count 1 of the indictment states that Jasso used his finger to
penetrate A.L.’s sexual organ on or about May 16, 2004, and count 4 of the
indictment alleges the same offense occurring on or about May 18, 2004.





[7] A.L. testified
that the perpetrator of the offenses made her pancakes for breakfast before he
would molest her, and A.L. testified that Estrada never made her pancakes or
breakfast; thus, a rational fact-finder could conclude that the alleged
offenses were not committed in 2007, nor by the other “Joe Richard” in this
case—Estrada.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979);
see also Brooks v. State, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS
1240, at *14 (Tex. Crim. App. Oct. 6, 2010) (plurality opinion).  





[8] Section 21.11,
entitled “Indecency With a Child” provides that:  “[a] person commits an
offense if, with a child younger than 17 years of age . . . the person . . .
[e]ngages in sexual contact with the child or causes the child to engage in
sexual contact.”  Tex. Penal Code Ann.
§ 21.11(a) (Vernon Supp. 2010).





[9] The
Texas Code of Criminal Procedure provides:

When the same defendant has been
convicted in two or more cases, judgment and sentence shall be pronounced in
each case in the same manner as if there had been but one conviction. . . .
[I]n the discretion of the court the judgment in the second and subsequent
convictions may either be that the sentence imposed or suspended shall begin
when the judgment and the sentence in the preceding conviction has ceased to
operate, or that the sentence imposed or suspended shall run concurrently with
the other case or cases, and sentence and execution shall be accordingly. . . .

Tex. Code Crim.
Proc. Ann. art. 42.08(a) (Vernon 2006).





[10] On appeal,
Jasso does not challenge the validity of sections 12.32 and 12.33 of the penal
code—the provisions prescribing the punishment range for first and
second-degree felonies.  See Tex.
Penal Code Ann. §§ 12.32, 12.33 (Vernon Supp. 2010).