ACCEPTED
04-14-00050-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/10/2015 12:26:16 PM
KEITH HOTTLE
CLERK

CAUSE NO. 04-14-00050-CR

_____

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
2/10/2015 12:26:16 PM
KEITH E. HOTTLE
Clerk

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

_____

TAYLOR RAE ROSENBUSCH,
Appellant

V.

THE STATE OF TEXAS,
Appellee

_____

Appeal from the 226th District Court of Bexar County, Texas
Trial Court Cause Number 2011-CR-11075

_____

**APPELLANT'S BRIEF**

_____

John F. Carroll
Attorney at Law
111 West Olmos Drive
San Antonio, Texas 78212
Telephone: (210) 829-7183
Facsimile: (210) 829-0734
SBN: 03888100
jcarrollsatx@gmail.com

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................v

    CASES ................................................................................ V

    STATUTES AND RULES ............................................... VI

    CONSTITUTIONAL PROVISIONS ............................. VI

    OTHER AUTHORITIES ..............................................VII

STATEMENT OF THE CASE .....................................................1

STATEMENT REGARDING ORAL ARGUMENT .........................................2

ISSUES PRESENTED ...................................................................3

    ISSUE NO. ONE ...................................................................3

    ISSUE NO. TWO ...................................................................3

    ISSUE NO. THREE .................................................................3

    ISSUE NO. FOUR ..................................................................3

    ISSUE NO. FIVE ...................................................................3

    ISSUE NO. SIX .....................................................................3

    ISSUE NO. SEVEN ................................................................3

INTRODUCTION AND STATEMENT OF FACTS ...........................................5

    BACKGROUND OF TAYLOR ROSENBUSCH ..............................................7

    CIRCUMSTANCES SURROUNDING THE OFFENSE ................................................9

ii

**AFTERMATH: CONTINUED TRAGEDY** ........................................................**10**

**SUMMARY OF THE ARGUMENT** ....................................................................11

**ISSUES FOR REVIEW RESTATED** ................................................................12

**ISSUE NO. ONE**........................................................................................**12**

**ISSUE NO. TWO**........................................................................................**12**

**ISSUE NO. THREE**.....................................................................................**12**

**ISSUE NO. FOUR**......................................................................................**12**

**ISSUE NO. FIVE** .......................................................................................**12**

**ISSUE NO. SIX** .........................................................................................**13**

**ISSUE NO. SEVEN** ....................................................................................**13**

**ARGUMENT**.................................................................................................13

**I.   ARGUMENT UNDER ISSUES REGARDING THE CUMULATION OF SENTENCES...**

**.............................................................................................................13**

a.   **Issues One through Three: Trial Court Should Admonish on the**

**Possibility of Consecutive Sentences**........................................................13

b.   **Issue Four: Because There are No Standards By Which a Trial Court**

**Can Determine Whether to Cumualte Sentences, Article 42.08 is**

**Unconstitutional**........................................................................................16

c. Issue Five: The Jury Should Be Instructed as to the Trial Court's Authority to Cumulate Sentences .......................................................19

II. ARGUMENT AND AUTHORITIES UNDER ISSUES FOR REVIEW REGARDING THE RE-CREATION OF THE SCENE OF THE ACCIDENT ........................................**23**

a. Predicate for Re-Creation Not Met ..........................................................23

b. Evidence was Irrelevant and Unncessary .................................................24

c. Re-creation did not Match Conditions of Actual Scene ........................25

d. Cumulative Evidence ...................................................................................26

d. Harmful Error ...............................................................................................27

CONCLUSION.................................................................................................28

CERTIFICATE OF SERVICE ..........................................................................29

CERTIFICATE OF COMPLIANCE .................................................................29

# TABLE OF AUTHORITIES

## CASES

*Aguirre-Mata v. State,* 125 S.W.3d 473 (Tex. Crim. App. 2003) ...........................14

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984)....................................23

*Barrow v. State*, 207 S.W.3d 377 (Tex. Crim. App. 2006) .....................................16

*Beasley v. State*, 718 S.W.2d 304 (Tex. Crim. App. 1985) .....................................22

*Boykin v. Alabama*, 395 U.S. 238 (1969) ..................................................................13

*Brady v. United States*, 397 U.S. (1970)....................................................................14

*Brown v. State*, 657 S.W.2d 143 (Tex. Crim. App. 1983)........................................24

*Cantu v. State,* 738 S.W.2d 249 (Tex. Crim. App. 1987).........................................27

*Carney v. State* 573 S.W.2d 24 (Tex. Crim .App. 1978)..........................................14

*Ginther v. State,* 672 S.W.2d 475 (Tex. Crim. App. 1984) .....................................27

*Kniatt v. State,* 206 S.W. 3d 657 (Tex. Crim. App. 2006).......................................13

*Kolender v. Lawson*, 461 U.S. 352,357-358 (1983) .................................................18

*McMillan v. Pennsylvania*, 477 U.S. 79, 85 (1986) .................................................17

*Quintana v. State*, 777 S.W.2d 474 (Tex. App. – Corpus Christi 1989, pet. ret'd) .14

*Skilling v. United States*, 130 S.Ct. 2896, 2927-2928 (2010)..................................18

*Smith,* 575 S.W.2d 41 (Tex. Crim. App. 1979) ........................................................14

*United States v. Booker*, 125 S. Ct. 738 (2005).......................................................16

*United States v. Booker*, 125 S. Ct. 738, 753 (2005)...............................................17

*Vitek v. Jones*, 445 U.S. 480 (1980)..............................................................17

## STATUTES AND RULES

Tex, Code Crim. Proc. Art. 37.071, §7(b)(1)....................................................7

Tex. Code Crim. Proc. 37.07 ..........................................................................21

Tex. Code Crim. Proc. 37.07, §2(b).................................................................20

Tex. Code Crim. Proc. Art. 36.14 ...................................................................20

Tex. Code Crim. Proc. Art. 37.07, §3(b) .................................................... 20, 22

Tex. Code Crim. Proc. Art. 37.07, Sec. 2(b) ...................................................23

Tex. Code Crim. Proc. Art. 37.07, Sec. 4 .........................................................6

Tex. Code Crim. Proc. Art. 42.08 ............................................. 3, 11, 12, 16, 17, 18

Tex. Code Crim. Proc. Art. 42.08(b) ...............................................................17

Tex. Pen. Code § 3.03(b)(1)(A)......................................................................17

Tex. Pen. Code Sec. 3.03(a)...........................................................................17

Tex. R. App. P. 44.2......................................................................................28

Texas Rule of Evidence 404(b)........................................................................6

## CONSTITUTIONAL PROVISIONS

Fifth and Fourteenth Amendments to the United States Constitution....................18

**O**THER **A**UTHORITIES

Bertrice Luna, Ph.D., "Brain and Cognitive Processes Underlying Cognitive

  Control of Behaviors in Adolescents", University of Pittsburgh, Oct. 2005 .........8

Johnson, Blum, Giedd (15(3)), "Adolescent Maturity and the Brain: The Promise

  and Pitfalls of Neuroscience in Adolescent Health Policy," Adolescent Health,

  September 2009, pp. 216-221 ...............................................................................7

Paul Thompson, Ph.D., "Time Lapse Imaging Tracks Brain Maturation from Ages

  5-20." National Institute of Mental Health and the University of California at Los

  Angeles, May 2004. ............................................................................................8

## STATEMENT OF THE CASE

Appellant was charged by two separate indictments with the offenses of intoxication manslaughter arising out of a single automobile accident in which two persons riding together in a vehicle tragically lost their lives. (CR 4-14-50-CR p. 12; CR 4-14-688-CR p. 15)[1] A jury was selected and sworn. Appellant entered a plea of guilty to both indictments and the trial proceeded on the issue of punishment. The issue of punishment was submitted to the jury. (CR 34-35) The jury returned punishment verdicts of a sentence of confinement in prison for a term of twelve years in each case. (CR 34-35) The jury also made affirmative findings of the use of a deadly weapon in each case. (CR 34-35) After the jury verdicts were received, the State presented a Motion for the Court to Cumulate the sentences. (CR 29-31)The trial court granted the motion. (CR 31)

---

[1] All references to the Record are to the record in this case No. 04-14-00050-CR, unless otherwise specified

1

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests the opportunity to present oral argument in this case. The jury was selected in one day. Evidence was presented over the course of three days. On the last day of the trial, arguments were presented and the jury's verdicts were returned. It is no overstatement that the jury's decision to impose a lengthy prison sentence was a devastating blow. But then, with the stroke of a pen, the trial court doubled the impact by cumulating the sentences. There are significant issues in this case regarding the future of a devastated and tragic young person, the due process rights to be informed of the consequences of a plea, the responsibility of a trial court to fully admonish a person as to sentencing consequences, the constitutionality of the cumulation statute and the appropriate limits to place on re-creation evidence. Oral argument regarding these issues is appropriate, it is important to the jurisprudence of this State and is important to the manner of the administration of justice in our community.

## ISSUES PRESENTED

**Issue No. One:**     The trial court committed error in failing to admonish Taylor Rosenbusch at the time that she entered a guilty plea that she was subject to a total range of punishment of up to 40 years in prison as a result of the trial court's authority to cumulate her sentences, in violation of her right to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

**Issue No. Two:**     The trial court committed error in failing to admonish Taylor Rosenbusch at the time that she entered a guilty plea that she was subject to a total range of punishment of up to 40 years in prison as a result of the trial court's authority to cumulate her sentences, in violation of her right to due course of law as guaranteed by the Article I, Section 10 of the Texas Constitution.

**Issue No. Three:**  Taylor Rosenbusch' plea of guilty was involuntary and should be set aside because she was not admonished at the time that she entered a guilty plea that she was subject to a total range of punishment of up to 40 years in prison as a result of the trial court's authority to cumulate her sentences.

**Issue No. Four:**    Article 42.08 of the Texas Code of Criminal Procedure is unconstitutional as applied to this case in that it fails to provide for any due process rights in connection with a determination to cumulate sentences and is subject to arbitrary application.

**Issue No. Five:**    The trial court committed error in failing to submit an instruction to the jury in the Court's Charge on Punishment regarding cumulation of sentences.

**Issue No. Six:**     The trial court committed error in permitting the State to demonstrate a re-creation of the accident by showing the actual mangled vehicles involved in the accident allegedly in the position they were in immediately prior to the accident, that was not relevant and was not conducted under conditions similar to those existing at the time of the event in question.

**Issue No. Seven:**  The trial court committed error in permitting a jury view of the two vehicles involved in the accident positioned outside the

3

courthouse in the position they would allegedly have been in immediately prior to the collision.

TO THE HONORABLE FOURTH COURT OF APPEALS:

Now Comes Taylor Rae Rosenbusch, Appellant, and files this Appellant's Brief as follows:

## INTRODUCTION AND STATEMENT OF FACTS

Tony Morin and Keith Hernandez lost their lives in a traffic accident when the car they were travelling in collided with a vehicle being driven by 19 year old Taylor Rosenbusch, the Appellant. She was intoxicated and was driving the wrong way on Interstate 35 on the city's northeast side.

The State chose to secure two separate indictments against Taylor. (CR 4-14-00050-CR, p. 12; CR 4-14-00688-CR, p. 15) The two indictments were identical except for the name of the complainant. Both indictments were based on the exact same conduct by Ms. Rosenbusch and both were based on the one terrible accident that she caused.

The way this case worked out is that Taylor was subjected to the exact same punishment that she would have received if she had caused a person's death in a drunk driving accident, got released on bond and went out the very next week, got heavily intoxicated and caused the death of a second person in a second drunk driving accident. But that is not what happened.

The State tried this case like a personal injury lawsuit. The focus was on the two men whose lives were tragically lost. The State proved the wrong way driving,

the accident and the intoxication. It then moved on to the victims of the accident and their families, calling family members to talk about Mr. Morin and Mr. Hernandez and the kind of people they were and what they meant to their families. (RR Vol. V, pp. 37, 50, 61, 69). It isn't bad that the prosecution wanted to introduce such evidence, but it does show the focus of the prosecution. Taylor, the person "on trial", was a mere afterthought. The focus of the punishment case by the State was punishing the crime, not the criminal. She didn't matter. Put anyone in the defendant's chair. It didn't matter. This case was not about what to do about Taylor Rosenbusch. It was all about the District Attorney administration's perception of the proper manner to fight a social ill, drunk driving.

For example, in most cases, the State uses its resources to investigate a defendant's background and develop potential bad acts evidence that can be used to show the jury what kind of a person the accused is and why the particular person on trial is punishment worthy. Not so here. The State gave no notice of intent to use extraneous bad conduct evidence in the guilt/innocence phase under Texas Rule of Evidence 404(b) or in the punishment phase under Article 37.07, Sec. 4, Texas Code of Criminal Procedure. (See Clerk's Record). It had no such evidence. No bad character evidence was used by the state. The State's lack of interest in the particular accused person was made clear by its voir dire which included questions such as: "Why do we have a DWI problem in Bexar County and what can jurors do about it"

6

(RR Vol. III, p. 25) and "Are you comfortable giving a first time offender 20 years". (RR Vol. III, p. 44).

Even in a capital murder case where the State seeks the death penalty, the value and goodness of the victim of the crime, while it can be proven in the punishment phase, is not a factor contributing to a finding that the death penalty is appropriate. That is dependent on the future danger posed by the accused. Tex, Code Crim. Proc. Art. 37.071, §7(b)(1).

**<u>Background of Taylor Rosenbusch</u>**

The story of Taylor Rosenbusch is tragic. We know that the loss of the two men who are identified in the very first sentence of this Brief is a terrible tragedy that never should have happened. But this Brief is, as it should be, about Taylor and about who she is and about what has happened to her and about what can and should be done, from a legal perspective, about it. On the day of that terrible accident, Taylor was nineteen years old. Nineteen years old. She was only twenty-two at the time of the trial (RR Vol. V, p. 125; RR Vol. VIII, State Ex. 52, p. 1). Science has made clear that the human brain is not fully developed before the age of 25. Johnson, Blum, Giedd (15(3)), *Adolescent Maturity and the Brain: The Promise and Pitfalls of Neuroscience Research in Adolescent Health Policy*, Adolescent Health, September 2009, pp. 216-221. A young person's cognitive development continues to this age and their emotional maturity, self- image and judgment will be affected

until the prefrontal cortex of the brain has fully developed. Bertrice Luna, Ph.D., *Brain and Cognitive Processes Underlying Cognitive Control of Behaviors in Adolescents*, University of Pittsburgh, Oct. 2005; Paul Thompson, Ph.D., *Time Lapse Imaging Tracks Brain Maturation from Ages 5-20*, National Institute of Mental Health and the University of California at Los Angeles, May 2004. While this is significant information, it is not all that is important to know about young Ms. Rosenbusch. Unfortunately, indeed, tragically, her very young life has been filled with sadness, trauma and misfortune even before the terrible accident that has brought her here.

Taylor lost her father when she was very young. He was involved in an intoxication related one car traffic accident on her seventh birthday. (RR Vol. V, pp. 131-132). But it's really worse than that because although she lost her father, he was not gone. He lived in a tragic permanent vegetative state. His mother, Taylor's grandmother, made a choice to keep him medically alive. He remained living in that awful state until Taylor was 19 years old. (RR Vol. V, pp. 89-90; 131-132; 136-137). That was the father she has known almost her entire life. Unfortunately, he was not there to protect her when she was raped at a very young age, or when a second rape occurred when she was in the eighth grade. (RR Vol. V, p. 134).

As a teenager, Taylor was physically abused by a boyfriend. (RR Vol. V, pp. 90; 137-138). She was anorexic and bulimic. (RR Vol. V, pp. 133-134). She started

cutting herself. (RR Vol. V, pp. 133-134). She attempted to commit suicide. (RR Vol. V, p. 134). She started drinking and using drugs. Not to be malicious. Not to hurt anyone, but in a misguided attempt to relieve her own trauma.

**Circumstances Surrounding the Offense**

Not long before the night of the accident, Taylor's mother allowed her to move to San Antonio. A decision, like many in Taylor's life, that everyone now regrets. She was taking classes at the Culinary Institute of San Antonio. (RR Vol. V, p. 126). She had made some friends. They turned out to be false friends. One of them was an older man, Paul Morales. (RR Vol. V, p. 126). It sounds funny for counsel to say older, he was only thirty-five years old. But to Taylor, he was older. He invited her to his birthday party. She went with a couple of her so-called friends, one of whom, Stephen, was to be the designated driver to make sure she got home (RR Vol. V, pp. 126; 128-129; 139-140). During the course of this party, the thirty-five year old host induced Taylor to drink "shots of tequila" and a mixed drink. (RR Vol. V, pp. 126-127). This is very important to this young, immature, scarred and wounded person's decision to leave the party. This thirty-five year old man had previously made comments that he was sexually interested in her. (RR Vol. V, pp. 127-128). She was at his house, he was much bigger and stronger than she was; she became frightened and looked for her friend to take her home. (RR Vol. V, pp. 126-129; 142-143). This "friend" was nowhere to be found. She would later find that he was drunk and had

passed out. She was fearful of being susceptible to her host and felt compelled to leave the party. Sadly, stupidly, tragically, she drove away in her vehicle and ended up going the wrong way on Interstate 35 where the awful collision occurred.

She was seriously injured as a result of the accident. She suffered a punctured lung, broken ribs, a broken pelvis and other broken bones. (RR Vol. VIII, State's Ex. 52, medical records). At the hospital that day she was told what had happened and that both occupants of the other vehicle involved in the accident had died. (RR Vol. IV, pp. 123-124) She was overcome with emotion and guilt and shame. (RR Vol. IV, pp. 123-124, 161) One of the police officers who was working on the case that night, Officer Tommy Johnson, maintained contact with Taylor and her family. He testified at the trial. (RR Vol. IV, p. 115) He was sympathetic to Taylor. As shown on the record, he was going to testify to his opinion that Taylor was deserving of a probated sentence. (RR IV, pp. 105-109).The trial court ordered in limine that such testimony not be introduced.

**Aftermath: Continued Tragedy**

While the case was pending, Taylor lived at her mother's home in Corpus Christi. Taylor again attempted suicide. She cut her arms one night and laid in bed to die. (R.R. Vol. V, pp. 148-152). She was found by her mother in the morning and taken to the hospital and her life was saved. After her suicide attempt in May 2011, she went to the Starlite Recovery Center. (RR Vol. V, p. 85). She worked with a

10

counselor there named Melanie Little. (RR Vol. V, p. 85). Ms. Little testified to working with Taylor and her observations. She found Taylor to be deeply depressed and suffering chemical dependency. (RR Vol. V, pp. 85-91). Taylor was remorseful and felt shame over what she had done. (RR Vol. V, pp. 90-93). Ms. Little worked with Taylor to help her understand her shame and to make amends. (RR Vol. V, pp. 92-94).

## SUMMARY OF THE ARGUMENT

Because the impact of the trial court's cumulation order was so significant and so devastating, due process demands that there be safeguards to protect Taylor from arbitrary determinations made without any guiding principles. Further, the absolute right to jury sentencing established in Texas law must have meaning and cannot be overwhelmed by a procedural determination made by a trial judge without guiding principles and procedural protections. An important protection that would ensure fairness in this case would be transparency. This could have been accomplished with proper admonishments as to the court's cumulation authority in sentencing. This could also have been accomplished by an instruction to the jury about the court's cumulation authority. The cumulation statute, article 42.08, Code of Criminal Procedure, has no procedural protections and no guiding principles. As such, it does not meet the requirements of due process and is unconstitutional.

11

The Rules of Evidence need to be applied fairly and properly and the re-creation of the "scene" just before the accident using the badly damaged vehicles involved in this case should not have been demonstrated to the jury as it failed to meet the required predicate to show its relevance, propriety and admissibility.

## ISSUES FOR REVIEW RESTATED

**Issue No. One:** The trial court committed error in failing to admonish Taylor Rosenbusch at the time that she entered a guilty plea that she was subject to a total range of punishment of up to 40 years in prison as a result of the trial court's authority to cumulate her sentences, in violation of her right to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

**Issue No. Two:** The trial court committed error in failing to admonish Taylor Rosenbusch at the time that she entered a guilty plea that she was subject to a total range of punishment of up to 40 years in prison as a result of the trial court's authority to cumulate her sentences, in violation of her right to due course of law as guaranteed by the Article I, Section 10 of the Texas Constitution.

**Issue No. Three:** Taylor Rosenbusch' plea of guilty was involuntary and should be set aside because she was not admonished at the time that she entered a guilty plea that she was subject to a total range of punishment of up to 40 years in prison as a result of the trial court's authority to cumulate her sentences.

**Issue No. Four:** Article 42.08 of the Texas Code of Criminal Procedure is unconstitutional as applied to this case in that it fails to provide for any due process rights in connection with a determination to cumulate sentences and is subject to arbitrary application.

**Issue No. Five:** The trial court committed error in failing to submit an instruction to the jury in the Court's Charge on Punishment regarding cumulation of sentences.

12

**Issue No. Six:**     The trial court committed error in permitting the State to demonstrate a re-creation of the accident by showing the actual mangled vehicles involved in the accident allegedly in the position they were in immediately prior to the accident, that was not relevant and was not conducted under conditions similar to those existing at the time of the event in question.

**Issue No. Seven:**  The trial court committed error in permitting a jury view of the two vehicles involved in the accident positioned outside the courthouse in the position they would allegedly have been in immediately prior to the collision.

## ARGUMENT

## I.     Argument Under Issues Regarding the Cumulation of Sentences

## a.     Issues One through Three: Trial Court Should Admonish on the Possibility of Consecutive Sentences

A guilty plea constitutes a waiver of three significant constitutional rights: the right to a jury trial, the right to confront one's accusers and the right not to incriminate oneself. *Kniatt v. State*, 206 S.W. 3d 657, 664 (Tex. Crim. App. 2006)(citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Consequently, a guilty plea cannot be entered and accepted unless it is made knowingly, intelligently and voluntarily so that the plea is consistent with due process of law. Id., citing *Boykin*, 395 U.S. at 242. "To be voluntary, a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises. *Id*. (citing *Brady v. United States*, 397 U.S. 742, 755 (1970). In *Aguirre-Mata v. State*, the Court of Criminal Appeals said that the Boykin Court

13

stated "generally that state courts should make sure that a guilty pleading defendant has a full understanding of what the plea connotes and of its consequences." 125 S.W.3d 473, 475 (Tex. Crim. App. 2003). The record must affirmatively disclose that a defendant who pleaded guilty entered his or her plea understandingly and voluntarily. *Brady v. United States*, 397 U.S. 742, 758 (1970).

Admonishment as to the range of punishment to include the potential for cumulation of sentences is necessary to satisfy the requirements of due process. Under Texas law, so long as the law authorizes the imposition of cumulative sentences, a trial judge has absolute discretion to stack sentences. *Quintana v. State*, 777 S.W.2d 474, 480 (Tex. App. – Corpus Christi 1989, pet. ret'd); *Smith* 575 S.W.2d at 41, 41 (Tex. Crim. App. 1979).; *Carney v. State* 573 S.W.2d 24, 27 (Tex. Crim .App. 1978).

## No Admonishment on Authority to Cumulate Sentences

In this case, Taylor Rosenbusch entered a plea of guilty before the jury. (RR Vol. IV, p.4). Prior to accepting such guilty plea, to both indictments, the trial court inquired of Ms. Rosenbusch regarding her decision and admonished her regarding certain rights and consequences. (RR Vol. IV, pp. 3-8). The trial court's admonishments did not include a warning that any sentences imposed by the jury were subject to the trial court's decision to cumulate them. She was not warned that she may have to serve consecutive sentences and that the effective range of

punishment was not a maximum of twenty years, but rather, a maximum of forty years.

**The Significance of a Cumulation Order Requires Notice From the Court Prior to Accepting a Guilty Plea**

Because of the significance of a cumulation order, due process requires that a guilty plea is involuntary and should not stand unless the record clearly shows that an understanding of the consequences of the plea includes notice of the trial court's unfettered discretion to cumulate sentences. *See e.g.*, <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969)(defendant must have a full understanding of what the plea connotes and its consequences). That did not happen in the instant case and the trial court's failure to fully admonish rendered the guilty plea involuntary. The due course of law guarantee under the Texas Constitution should require no less than such admonishments as to the trial court's authority to cumulate sentences. Article I, Section 19, Texas Constitution.

The difference between concurrent and consecutive sentences is significant. It can result in an actual doubling of the sentence imposed and, as seen in the instant case, can be accomplished by the mere stroke of a pen. (CR 31) The Texas Court of Criminal Appeals has held that the cumulation of individual sentences does not implicate discrete fact finding that affects the statutory maximum punishment and, as a result, does not activate the Sixth Amendment right to a jury determination

15

mandated by the United States Supreme Court's decision in *Apprendi* and following cases. <u>*Barrow v. State*</u>, 207 S.W.3d 377 (Tex. Crim. App. 2006). This however, makes even more important that accused persons be afforded due process and due course of law in connection with cumulation orders as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the Texas Constitution. The right to due process applies to criminal sentencing determinations. *See e.g.* <u>*United States v. Booker*</u>, 125 S. Ct. 738, 753 (2005).

Taylor Rosenbusch was harmed by the trial court's failure to admonish her as to the consecutive sentencing provisions of the law that applied to her case. As a result, the convictions and sentences imposed should be set aside and the cases remanded for a new trial. The failure to so admonish rendered the guilty pleas involuntary and the convictions and sentences imposed should be set aside and the cases remanded for a new trial.

## b.   Issue Four: Because There are No Standards By Which a Trial Court Can Determine Whether to Cumualte Sentences, Article 42.08 is Unconstitutional

There really are no guidelines for determining whether a sentence should be cumulated in a case such as the instant case. It is simply discretionary. See Texas Penal Code § 3.03(b)(1)(A) and Texas Code of Criminal Procedure 42.08. The legislature has mandated in certain circumstances that a sentence must be

16

cumulative. Such as when a person commits an offense while he is an inmate of the institutional division. In such case, the statute requires that any sentence received on the new offense must be cumulated with the sentence he was serving at the time of the commission of the offense. Tex. Code Crim. Proc. Art. 42.08(b). Cases tried together which arise out of the same criminal episode must not be cumulated and must run concurrently, unless specifically excepted from that rule. Tex. Pen. Code § 3.03(a). There is no mandatory cumulation requirement in cases such as the instant case. Tex. Pen. Code § 3.03(b)(1)(A). There is no prescribed process for entering a cumulation order. See Tex. Code Crim. Proc. Art. 42.08. There is no process for notifying an accused person that a cumulation order is being contemplated. There is no process for an accused person to be heard on the issue of whether sentences should be cumulated.

A person is entitled to due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution in criminal sentencing. *United States v. Booker*, 125 S. Ct. 738, 753 (2005); *McMillan v. Pennsylvania*, 477 U.S. 79, 85 (1986). In *Vitek v. Jones*, 445 U.S. 480 (1980), the Supreme Court held that the involuntary transfer of a state prisoner to a state mental hospital without notice and an adversary hearing violated the due process clause of the Fourteenth Amendment. *Id*. at 491-492. Because the transfer constituted the deprivation of a liberty interest, the prisoner was entitled to the due process rights of notice and a hearing prior to the

17

entry of an order directing the transfer. In the instant case, the entry of a cumulation order under article 42.08 of the Code of Criminal Procedure impacts a liberty interest in that it results in an increased punishment. Specifically in this case, an increase of twelve years in the sentence that Ms. Rosenbusch will be required to serve. Due process requires that there be procedural protections enacted so that a person's liberty interests are not adversely impacted without the required constitutional protections.

As it is presently constructed, article 42.08 provides no such protections and, therefore, violates the due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution. In addition, because there are no guidelines or standards for courts to follow in deciding whether to cumulate sentences, article 42.08 is unconstitutionally vague because it is subject to arbitrary determinations in violation of the requirements of due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. *Skilling v. United States*, 130 S.Ct. 2896, 2927-2928 (2010); *Kolender v. Lawson*, 461 U.S. 352,357-358 (1983).

Because the cumulation statute is unconstitutional, the cumulation order entered pursuant to said statute should be set aside and the sentences in the two cases should be ordered to be served concurrently.

**c.  Issue Five: The Jury Should Be Instructed as to the Trial Court's Authority to Cumulate Sentences**

The issue of whether the sentences would run consecutively or concurrently is clearly material to the issue of what sentence should be imposed. That is an issue that Ms. Rosenbusch and her attorneys had a right to be determined by a jury. Indeed, Ms. Rosenbusch signed and filed a written election to have the jury determine her punishment. (CR 27). The jury in this case also was concerned about the issue of consecutive v. concurrent sentences. They were given no instructions on the issue. (R.R. VII, pp. 9-17). They were not asked to answer any questions on the issue. (R.R. VII, pp. 14-17). They were not given any information on which to give the issue consideration. They tried. They were obviously concerned about it. The jury sent out a note during their deliberations asking for guidance. It read: "On the possible sentence to confinement for the two cases, would the terms be served consecutively or concurrently?" (CR 32, RR Vol. VII p. 71). To this very important and germane question, the trial court responded: "The court is not permitted to respond to your questions, please follow the instructions in the Charge of the Court and continue your deliberations." (RR Vol. VII, p. 71). This gave no guidance to the jury at all. And once it was over and the jury had returned its punishment verdict, their decision was taken from their hands, from their influence and from their determination and

the trial court entered a short order that doubled the sentence imposed on Taylor. (CR 31)

In Texas, people have the right to elect to have a jury determine their sentence in the event they are convicted of a crime. Tex. Code Crim. Proc. 37.07, §2(b). If that right is to have any meaning, the law cannot allow a trial court to make a decision, after the jury carefully deliberates on the appropriate punishment, that doubles the sentence imposed by the jury. That allows for arbitrary results and allows trial courts to override jury sentencing. In addition, there are no guidelines for the trial court to follow in deciding whether to cumulate sentences. To properly balance the statutory authority of the trial court to cumulate certain sentences with the statutory authority of the jury to determine the sentence, there must be communication between the trial court and the jury regarding the issue of cumulation of sentences. The jury should be aware, not only of the trial court's authority to take such action, but must also know whether such action will be taken. Article 36.14 of the Code of Criminal Procedure, entitled "Charge of the Court" requires the trial court to deliver to the jury, "a written charge distinctly setting forth the law applicable to the case…" Tex. Code Crim. Proc. Art. 37.07, §3(b), provides that, after the introduction of…(punishment) evidence has been concluded, and if the jury has the responsibility of assessing the punishment, the court shall give such additional written instructions as may be necessary…"

If the jury is not informed of the trial court's cumulation authority, then the trial court's authority to affect a sentence swallows the accused person's right to a sentence imposed by a jury.

Texas law does not prohibit a trial court from instructing a jury on cumulation of sentences. Tex. Code Crim. Proc. 37.07. To give proper balance to the competing concerns described above, the trial court should be required to make a determination of whether the sentences will run consecutively or concurrently prior to submitting the case to the jury. At that point the evidence is closed and the trial court has all the information it needs in order to make an informed decision on whether to cumulate sentences. If the trial court waits until after the jury returns its verdict on punishment, then the authority to cumulate allows the trial court to "fix" what the jury has done in reaching a verdict and ensure the imposition of a sentence the trial court thinks is appropriate, regardless of the desire and decision of the jury. When the trial court can enter an order that doubles the sentence imposed by the jury, the right to elect a jury to decide punishment becomes illusory. Texas law is clear that a trial court judge has no authority to override a jury decision on punishment. Once a jury verdict assessing punishment has been received by the court and entered of record, the trial court is not entitled to change the verdict of the jury. *Beasley v. State,* 718 S.W.2d 304, 305 (Tex. Crim. App. 1985). However, that is exactly what the trial court can do in cases such as this. The trial court, by a mere order, can double the jury sentence.

21

That has the effect of overriding the jury's verdict. Such a result is contrary to Texas law providing for jury sentencing. That is what happened in this case.

The trial court should make the decision on a State's request to cumulate sentences before submitting the case to the jury and should include in the court's charge an instruction telling the jury whether the sentences they elect to impose will run concurrently or consecutively. This would be an appropriate and necessary instruction under Tex. Code Crim. Proc. Art. 37.07, §3(b). This will eliminate the type of uncertainty that occurred in the instant case when the jury sent out a note asking about cumulation of sentences only to be told that they could not receive further instruction on that issue. It would ensure that the determiner of the proper punishment, the jury, had all the information relevant to its decision to allow it to pronounce a sentence that bore relevance and relation to the actual sentence to be imposed. Such a procedure and instruction would have been appropriate and necessary in the instant case to give full effect to Ms. Rosenbusch' election for jury sentencing. The failure of the trial court to give such an instruction, although not requested by the defense, constituted egregious harm justifying a new punishment hearing in this case. _Almanza v. State_, 686 S.W.2d 157, 160-174 (Tex. Crim. App. 1984).

The harm is evident. Taylor was sentenced to twelve years in each case. The sentencing jury had no knowledge of whether and to what extent the trial court

22

order the sentences to run consecutively. The trial court ordered the sentences to run consecutively, thereby ensuring, as a matter of a judicial order, not a jury determination, that she would serve a twenty-four year sentence. The right to have one's sentence determined by the jury is absolute. Tex. Code Crim. Proc. Art. 37.07, Sec. 2(b). Once the defendant makes a proper and timely request, the sentence must be determined by the jury. Despite her proper request, the sentencing determination was effectively made by the trial court. His decision to cumulate sentences overrode the verdict of the jury and caused egregious harm to Taylor Rosenbusch.

The cumulation order should be set aside as a result of the failure to properly instruct the jury, or, alternatively, the punishment verdict should be set aside and the cases remanded to the trial court for a new trial on the issue of punishment.

## II. Argument and Authorities Under Issues for Review Regarding the Re-Creation of the Scene of the Accident

### a. Predicate for Re-Creation Not Met

The State filed a Motion with the trial court requesting that it be permitted to positon the two vehicles from the accident on the street outside the courthouse so the jury could see them in the position they were in just before the collision. (CR 21) In order to introduce evidence of a re-creation experiment, the State must establish the following predicate: (1) the results would be helpful to the trier of fact in deciding any relevant issue; and (2) that the out of court experiment was conducted under

23

conditions similar to those existing at the time of the event in question. *Brown v. State*, 657 S.W.2d 143 (Tex. Crim. App. 1983). The State failed to establish this predicate and the trial court should not have permitted the State to create a demonstration of two badly damaged cars facing each other on the street outside the courthouse.

**b.**     **Evidence was Irrelevant and Unncessary**

There was no relevant issue the jury needed to decide with the assistance of this re-creation of the scene. Ms. Rosenbusch had entered a guilty plea to intoxication manslaughter. There was no contest in the trial that she drove a motor vehicle the wrong way on a highway and caused a head on collision that caused the death of two men. Evidence was introduced, and not challenged, that the data recovered from Ms. Rosenbusch' vehicle showed it was travelling at a speed of 52 miles per hour immediately prior to the collision. (RR Vol. IV, pp. 207-208) There was no contest as to what happened. The medical examiner's testimony as to the cause of death was not challenged. (RR Vol. V, pp. 20-36) It was fully presented to the jury. The jury did not need any further information. The defense did not challenge the evidence of intoxication. That evidence was introduced, and not challenged. It was shown by the testimony of witnesses who observed Taylor's state after the accident (RR. Vol. IV, pp. 79-81, 121-122, 153-159) and by evidence of two blood draws which showed that Ms. Rosenbusch had an alcohol concentration

of .26 in a sample that was taken about one hour after the accident (RR Vol. V, pp. 8-9; RR Vol. VIII, State's Ex. 52) and .18, in a sample that was taken about two and one-half hours after the accident. (RR Vol. IV, p. 223, Vol. VII, State Ex. 37)

**c.** **Re-creation did not Match Conditions of Actual Scene**

There was not even a pretense made that the out of court demonstration was conducted under conditions similar to those existing at the time of the event. The re-creation was done in broad daylight on a city street outside the courthouse. (R.R. Vol. IV, p. 190). The accident occurred at night on a highway. The re-creation showed two vehicles badly damaged by a collision outside the courthouse at approximately 4:00 p.m. in the afternoon (R.R. Vol. IV, p. 190). Immediately prior to the actual accident, the vehicles were not in such badly damaged condition. In fact, there was no evidence introduced as to the relative condition of the two vehicles prior to the accident, so there could not be any finding that the re-creation was similar to reality. This was just an excuse for the State to show the damage to the vehicles. Damage that was fully proven and fully established by testimony and photographic evidence. There was no similarity to reality in this re-creation. The conclusory and truncated predicate to the admissibility of the re-creation and demonstration did not render it appropriate:

Q: (Prosecutor) Now, we had you coordinate bringing the vehicles from this crash over outside the courthouse today; is that right?

A: (Det. Doyle) That's correct.

25

Q:     And position them in such a way that they're facing each other like impact would have happened; is that right?

A:     That's correct.

Q:     Do you think that that evidence would be helpful to the jury in assessing the severity of this particular crash?

A:     Well, no doubt about it, a picture's one thing, seeing something is something altogether different.

(R. IV 189).

That's it. That was the evidentiary basis for the re-creation and for showing it to the jury. The State simply did not meet the predicate requirements for taking the jury outside to look at the damaged vehicles. The issue was thoroughly discussed with the trial court and defense objections were asserted and overruled. (R.R. Vol. IV, pp. 109-114). To be admissible, an experiment must be conducted under conditions which are similar to the event to be duplicated. *Ginther v. State*, 672 S.W.2d 475 (Tex. Crim. App. 1984); *Cantu v. State*, 738 S.W.2d 249, 255 (Tex. Crim. App. 1987). In *Cantu*, the Court found no error in the trial court's refusal to permit a defense experiment due to dissimilarities between the conditions at the time of the event and at the time of the experiment. *Cantu*, 738 S.W.2d at 255.

d.     **Cumulative Evidence**

The State introduced numerous photographs depicting both vehicles and clearly showing their state and the damage inflicted upon them. (R.R. Vol. VIII,

26

States Ex. 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 24, 25, 26, 27). The State also introduced numerous photographs of the two men who lost their lives, graphically showing the severity of their injuries. (R.R. Vol. VIII, States Ex. 6, 18, 19, 20, 21, 22, 23, 28, 31). This included photos at the scene and autopsy photos. There was no need for the demonstrative re-creation. There was no proper evidentiary basis for its use in this case. The jury view and re-creation should not have been permitted. The re-creation evidence as demonstrated to the jury was improper because the State failed to establish the predicate for admissibility. That predicate is basically a requirement that the State show the evidence is relevant and, therefore, admissible under Rule 402, Texas Rules of Evidence. The evidence failed the relevancy test. In addition, any probative value was outweighed by the danger of unfair prejudice, confusion of issues and the needless presentation of cumulative evidence. As a result, the re-creation was also inadmissible under Rule 403, Texas Rules of Evidence.

**d.** **Harmful Error**

The trial court's error was harmful to Appellant. She was a sympathetic unfortunate and very young person who had never been arrested before, let alone had any contact with the criminal justice system. For her first offense she was severely punished. Her application for probation was denied. She was given two 12 year prison terms which were cumulated resulting in a twenty-four year prison

sentence. The error of the trial court adversely affected the right of Ms. Rosenbusch to a fair and impartial trial, one properly decided on the facts as properly admitted under the Rules of Evidence. Tex. R. App. P. 44.2. The verdict on punishment should be set aside and the cases remanded to the trial court for a new trial on the issue of punishment.

## CONCLUSION

WHEREFORE, for the reasons stated herein, Appellant Taylor Rosenbusch respectfully requests that the Court reverse the judgment and sentence imposed and remand this case to the trial court for a new trial, or set aside the punishment verdict and remand the case to the trial court for a new trial on the issue of punishment, or set aside the trial court's order cumulating sentences.

Respectfully submitted,

John F. Carroll
Attorney At Law
111 West Olmos Drive
San Antonio, Texas 78212
210/829-7183 - Telephone
210/829-0734 - Facsimile
jcarrollsatx@gmail.com

ATTORNEY FOR APPELLANT,
TAYLOR RAE ROSENBUSCH

By: /s/ John F. Carroll
    John F. Carroll
    State Bar No. 03888100

28

**CERTIFICATE OF SERVICE**

I do hereby certify that a true and correct copy of the above has been delivered to the Bexar County District Attorney's Office, Paul Elizondo Tower, 101 W. Nueva, 4th Floor, San Antonio, Texas 78205 on the 10th day of February, 2015.

/s/ John F. Carroll
John F. Carroll


**CERTIFICATE OF COMPLIANCE**

I certify under Texas Rule of Appellate Procedure 9.4(i)(3) that this Brief was prepare using Microsoft Word and that the word count shows that the total number of words in this brief is 7643 on the 10th day of February, 2015.

/s/ John F. Carroll
John F. Carroll